MUSKOGEE NAT'L TELEPHONE CO. vs HALL, et al.

Opinion delivered October 5, 1901.

1. *Telegraphs and Telephones—Franchises in Indian Territory—Interstate Commerce.*

The Act of the Creek Council granting an exclusive franchise within that Nation to a company for the construction of a telephone system, is in conflict with the interstate commerce clause of the U. S. Constitution (Art. 1, Sec. 8) in so far as it relates to foreign or interstate business; but is constitutional and valid as to the franchise to operate such system locally within the limits of said nation.

2. *Municipal Corporations—Telephone Franchises—Interior Department.*

Prior to the passage of Act of Cong. March 3, 1901 (31 Stat. 1083), municipal corporations could grant no valid franchise for construction and operation of a telephone system within their corporate limits; nor could permission of the Interior Department accord any such rights.

3. *Act of Cong. March 3, 1901 Construed—Constitutionality—Impairment of Contracts.*

The act of Cong. Mar. 3, 1901, devested from Creek Nation and conferred upon the Secretary of Interior full control over all telegraph and telephone lines in the Indian Territory, whether local or interstate, and such act is constitutional, at least so far as it applies to all territory of the Creek Nation not actually occupied by lines of telephone, and did not impair any vested rights of a corporation having a franchise from the Creek Council which had not erected telephone lines in the city wherein the controversy over conflicting rights arose.

4. *Creek Nation—Injunction—Parties.*

Until the title to lands in cities and towns in the Creek Nation is devested from the Nation, any telephone company erecting lines within

that Nation without complying with provisions of Act of Cong. March 3, 1901, is a trespasser upon the Nation's lands, and the Nation is the proper party to seek and obtain an injunction in an equitable action.

*Injunction—Legislation Pending Appeal.*

The Court of Appeals will not reverse a decree refusing an injunction, however, erroneous, when, pending appeal, the right upon which plaintiff's claim is founded has been taken away from him by legislative enactment.

Appeal from the United States Court for the Northern District.

John R. Thomas, Judge.

Bill by Muskogee National Telephone Company against R. F. Hall and another to enjoin the erection of a telephone plant at Tulsa. From a decree in favor of defendants, plaintiff appeals. Affirmed as to plaintiff, and reversed as to the Creek Nation.

The appellant telephone company, on the 7th day of December, 1897, procured from the Creek Nation, through its council, a charter granting to it the exclusive right and privilege of erecting and operating telephone lines within the Creek Nation for a period of from 5 to 15 years, which period was, by the articles of incorporation, fixed at 10 years. The company proceeded to erect and maintain its lines of telephone at a number of places in the Creek Nation, but none at Tulsa. On the 5th day of June, 1899, after the passage of the Curtis bill, the town of Tulsa, having been duly incorporated under the provisions of that bill, by ordinance duly passed, granted to the appellees the right and privilege to construct and operate a telephone system in the said town of Tulsa. The appellees also procured from the honorable commissioner of Indian affairs, by the authority of the honorable secretary of the interior, permission to establish and operate a system of telephone exchange within the said town. This suit was brought in equity by the appellant to enjoin the appellees from proceeding, under the authority above set out, to erect and

operate their telephone plant at Tulsa. The case was submitted on the bill and answer, and at the hearing the court decreed in favor of appellees. The action of the court was duly excepted to, and the case regularly appealed to this court.

*S. M. Rutherford* and *Hutchings & West*, for appellant.

*S. S. Fears* and *Z. T. Walrond*, for appellees.

CLAYTON, J.   The question presented to us for determination is:   Did the Creek Nation, under its constitution and laws, and considering its relation to the United States government, have the power to grant an exclusive franchise for the period of 10 years for the erection and maintenance of a system of telephone that would embrace the whole of the territory of that nation? And, if so, has the Curtis bill, authorizing the incorporation of cities and towns with certain rights to grant and control franchises within their limits, and granting to the interior department certain powers, so far abrogated the Creek law as to permit another company, acting under the authority of the city and permission of the secretary of the interior, to erect and operate a system of telephone within the limits of such cities and towns? The Creek Nation, at the time of granting to appellant its franchise, was, to a certain extent, a sovereign nation: that is, in so far as its acts did not conflict with the constitution and laws of the United States, its sovereignty over its own territory and people was supreme, subject, of course, to such further acts of congress as that body might see fit to enact.   Article 15, Creek Treaty 1856 (Rev. Ind. Treaties, 111); article 10, Creek Treaty 1866 (Rev. Ind. Treaties, 119); Cherokee Nation vs Georgia, 5 Pet. 1, 8 L. Ed. 25; Worcester vs Georgia, 6 Pet. 515, 8 L. Ed. 483; Cherokee Nation vs Southern Kansas Ry. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295; U. S. vs Kagama, 118 U. S. 357, 6 Sup. Ct. 1109, 30 L. Ed. 228; Maxey vs Wright 3(Ind. Ter. Rep. 2 & 3) (54 S.W.807)Mehlin vs Ice,5 C.C.A. 403, 56 Fed. 12. And therefore,unless prohibited by the constitution or laws of the United States, it

had by virtue of its sovereignty, the legal power to grant such franchises. The interstate commerce clause of section 8 of article 1 of the constitution of the United States reads as follows: "The congress shall have power   *   *   *   to regulate commerce with foreign nations and among the several states and with the Indian tribes." In the case of Pensacola Tel. Co. vs Western Union Tel. Co., 96 U. S. 1, 24 L. Ed. 708, the supreme court of the United States, we think, has passed upon the question. The facts, in brief, in that case, were that the legislature of the state of Florida passed an act incorporating the Pensacola Telegraph Company, and granting to it the sole and exclusive privilege and right of establishing and maintaining lines of electric telegraph in the counties of Escambia and Santa Rosa, etc. The company was duly authorized to locate, construct, and maintain its lines within the counties named along and upon any public road or highway, or across any water, or upon any railroad or private property, for which permission should have first been obtained from the proprietors thereof. The supreme court held the act was void, because it was an attempt to interfere with the power of congress to regulate interstate commerce. Among other things, the court say: "The electric telegraph marks an epoch in the progress of time. In a little more than a quarter of a century it has changed the habits of business, and become one of the necessities of commerce. It is indispensable as a means of intercommunication, but especially is it so in commercial transactions. The statistics of the business before the recent reduction in rates show that more than eighty per cent. of all the messages sent by telegraph relate to commerce. Goods are sold and money paid upon telegraphic orders. Contracts are made by telegraphic correspondence, cargoes secured, and the movement of ships directed. The telegraphic announcement of the markets abroad regulate prices at home, and a prudent merchant rarely enters upon an important transaction without using the telegraph freely to secure information. It is not only important to the people, but to the govern-

ment.  By means of it the heads of the departments in Washington are kept in close communication with all their various agencies at home and abroad, and can know at almost any hour, by inquiry, what is transpiring anywhere that affects the interest they have in charge.  Under such circumstances it cannot for a moment be doubted that this powerful agency of commerce and intercommunication comes within the controlling power of congress, certainly as against hostile state legislation.  The state of Florida has attempted to confer upon a single corporation the exclusive right of transmitting intelligence by telegraph over a certain portion of its territory.  This embraces the only two western most counties of the state, and extends from Alabama to the Gulf.  No telegraph line can cross the state from east to west or from north to south, within these counties, except it passes over this territory.  Within it is situated an important seaport, at which business centers, and with which those engaged in commercial pursuits have occasion more or less to communicate.  The United States have there also a navy yard, forts, custom houses, courts, post offices, and the appropriate officers for the enforcement of the laws.  The legislation of Florida, if sustained, excludes all commercial intercourse by telegraph between the citizens of other states and those residing upon this territory, except by the employment of this corporation.  The United States cannot communicate with their own officers by telegraph except in the same way.  The state, therefore, clearly has attempted to regulate commercial intercourse between its citizens and those of other states, and to control the transmission of all telegraphic correspondence within its own jurisdiction.''  In Western Union Tel. Co. vs Texas, 105 U. S. 464, 26 L. Ed. 1068, the supreme court of the United States say:  "In Pensacola Tel. Co. vs Western Union Tel. Co., 96 U. S. 1, 24 L. Ed. 708, this court held that the telegraph was an instrument of commerce, and that telegraph companies were subject to the regulating power of congress in respect to their foreign and interstate business.  A telegraph

company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods." And we think that the same principles apply to telephone companies. Indeed it has been held that the word "telegraph" in a statute included telephones. In Cumberland Telephone & Telegraph Co. vs United Electric Ry. Co. (C C.) 42 Fed. 275, 12 L. R. A. 544, Judge Brown, of the Southern district of New York, says: "We see no reason to doubt the position assumed by complainant, that a telephone company is a telegraph company, and that under its (the company's) right to construct and operate telegraph it was empowered to establish a telephone service." In the case of Southern Bell Telephone & Telegraph Co. vs City of Richmond (C. C.) 78 Fed. 860, Goff, circuit judge, speaking for the court, says: "The insistence is that the complainant is a telephone company, and that said act of congress only embraces telegraph companies. A number of courts, the decisions of which are worthy of our serious consideration, if not binding authority upon us, have held that a telephone company is a telegraph company, and that a company authorized to construct and operate telegraphs was empowered to establish a telephone service. Attorney General vs Edison Tel. Co. of London, 6 Q. B. Div. 244; Wisconsin Tel. Co. vs City of Oshkosh, 62 Wis. 32, 21 N. W. 828; Cumberland Telephone & Telegraph Co. vs United Electric Ry. Co. (C. C.) 42 Fed. 273, 12 L. R. A. 544; Duke vs Telephone Co., 53 N. J. Law, 341, 21 Atl. 460, 11 L. R. A. 664; Cheasapeake & P. Tel. Co. vs Baltimore & O. Tel. Co., 66 Md. 410, 7 Atl. 809, 59 Am. Rep. 167." "Telephone companies, whether corporations or individuals, are engaged in public employment, and their business is affected with a public interest. They are bound, therefore, to serve impartially and without discrimination all who apply for service and who tender a compliance with their regulations. The telephone, though of recent discovery, has become almost indispensable to the commercial and business public; it is a vehicle of public intelligence." It is our opinion that the statute of the

Creek Nation granting to the appellant company an exclusive franchise for the operation of a system of telephone embracing the entire territory of the Creek Nation is, in so far as it relates to foreign and interstate or interterritorial business, in conflict with and in violation of the interstate commerce provision of the constitution.

But in this case it must be remembered that the termini and the entire plant are within the limits of the Creek Nation, to wit, in the town of Tulsa, and has no connection with any foreign or interstate line, and therefore does not come within the prohibition of the constitution. As to the defendants, the legislation of the Creek Nation was local and constitutional, and therefore, unless rendered void by some statute, the franchise created by it is valid and exclusive as to them. The Curtis bill does not give to cities and towns in the Indian Territory the power to grant such franchises, nor to enter into contracts for the construction and operation of a telephone system. The only powers conferred upon them is such as is conferred by Mansfield's Digest upon municipal corporations in Arkansas. Sections 754, and 755 (sections 524, 525, Ind. T. Ann. St. 1899) are as follows:

"Sec. 754. They shall have power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas-works and of street railroads.

"Sec. 755. For the purpose of providing water, gas or street railroads the mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes."

But nowhere does it appear that they have power to make such contracts as to telephones, and it does not exist. It may be true that by virtue of the ordinary powers of municipal corporations, even in the absence of express legislation, they may permit

or refuse to permit street cars or other quasi public business, to be used only for local purposes, the use of their streets and alleys. But they cannot, by implied power, confer corporate franchises, or authorize the taking of tolls.    This must come from the legislature.    2 Dill. Mun. Corp. 724.    See, also, section 698.    Municipal corporations in this jurisdiction have no such powers, and therefore, whatever may have been the extent of the grant of the town of Tulsa to the defendants, it conferred no rights save the mere naked permission of the town to the defendants to enter upon the streets and alleys and erect their poles and wires.    It granted no franchise.    It was no legal contract, and gave to the defendants no other or better standing in court than if the by-law conferring the supposed right had not been passed.    And the same can be said as to the permission granted by the interior department of the government to the defendants to establish and operate a system of telephone exchange within the town of Tulsa.    The act of March 3, 1901 (31 Stat. 1083), conferring upon the secretary of the interior the power to grant a right of way for telephone lines, etc., over and through lands held by indian tribes or nations in the Indian Territory, had not then been passed.    At that time the secretary of the interior was without power to grant such rights, except in so far as that such permission would have the effect of giving them, as being white men, the right to be in the Indian Territory lawfully, and not as intruders.    It granted them no franchise nor right other than was common to all other people lawfully in the Indian Territory to erect and operate a system of telephone in the town of Tulsa; and therefore, at the time of bringing this suit, as well as at the time the decree in favor of the defendants was rendered, they (the defendants) were without any legal official authority to erect and operate their system of telephone; and the complainant was possessed of a legal franchise, granting to it the exclusive right so to do within the limits of the Creek Nation as against all whose plants and telephonic operations were to be exclusively within the limits of the Creek Nation,

and not connected with any foreign or interstate line. But since the decree, and pending this appeal, congress has, by the act of March 3, 1901 (31 Stat. 1083), as we construe it, taken the whole control of telephone lines and franchises relative to them from the Creek Nation, and placed it in the hands of the secretary of the interior. The act reads as follows: "That the secretary of the interior is hereby authorized and empowered to grant a right of way, in the nature of an easement, for the construction, operation and maintenance of telephone and telegraph lines and offices for general telephone and telegraph business, * * * through any lands held by an Indian tribe or nation in the Indian Territory, * * *. or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, upon the terms and conditions herein expressed. No such lines shall be constructed across Indian lands, as above mentioned, until authority therefor has first been obtained from the secretary of the interior, and the maps of definite location of the lines shall be subject to his approval. The compensation to be.paid the tribes in their tribal capacity and the individual allottees for such right of way through their lands shall be determined in such manner as the secretary of the interior may direct, and shall be subject to his final approval; * * * and all such lines shall be constructed and maintained under such rules and regulations as said secretary may prescribe. * * * Provided, that incorporated cities or towns into or through which such telephone or telegraphic lines may be constructed shall have the power to regulate the manner of construction therein, and nothing herein contained shall be so construed as to deny the right of municipal taxation in such towns and cities." That this statute was intended to give the secretary of the interior full and complete official and governmental control of franchises relating to telephone and telegraph lines in the Indian Territory, and to deprive the Indian governments of all control of the same, there can

be no doubt. The only question is, in this case, does it have the effect of impairing a right vested in the complainants by the Creek act, and for that reason is it unconstitutional? Inasmuch as the plaintiff company was acting under a legal charter, as far as the questions in controversy in this case are concerned, up to March 3, 1901, the time the aforesaid act went into effect, it seems to us clear that any property rights they may have acquired by virtue of and through the franchise up to that time were vested, and were, therefore, beyond the control of legislative action. But the effect of the act was to repeal the charter of the corporate company; not directly, it is true, but by devesting the government which had granted the charter of all control of the subject-matter, and taking it into its own control. The charter granted to the corporation by the Creek council was for the sole purpose of erecting and operating telephones in the Creek Nation. By the direct terms of the act, its business was limited to that. But by the terms of the act of congress of March 3, 1901, no person nor corporation is allowed to conduct the said business without first securing a franchise from the general government, through the secretary of the interior, and in so far, at least, as to territory of the Creek Nation not actually occupied, and upon which no expenditure of money had been made, by the old corporation, the act is constitutional, because as to that the company had no vested right; and therefore the plaintiff, not having occupied the town of Tulsa with its line, and not having made any expenditure of money therein, is in the same situation as the defendants. Neither, as the case now stands, have the right to erect or conduct a system of telephone in Tulsa. The right must be obtained under the act of March 3, 1901, before either can legally erect or operate the said telephone system. And therefore, under the present conditions, the plaintiff telephone company would not be a proper party to the suit. But the Creek Nation, under the allegations of the amended bill, stands in a different attitude. Among other things, the amended bill alleges.

"It further states that it is the owner in fee of the lands and property upon which the defendants are erecting telephone poles, and that in erecting said poles and stringing wires thereon they are trespassing upon the lands of the Creek Nation, and thereby imposing additional burdens upon the public domain, and the roads running through the same, without permission of the said Creek Nation, and without the payment to it for the use of said lands and thereby depriving said nation of its property and rights without due process of law." The title to the lands in the cities and towns of the Creek Nation is still in that nation; and, at least until the title shall have been devested from the said nation under the provisions of the Curtis bill, telephone companies have no right to take possession of their lands in the said cities and towns, and erect their poles, and proceed to business, until they have complied with the provisions of the act of March 3, 1901; and, unless they do so, they are trespassers upon the lands and upon the rights of the Creek Nation, and at its instance equity will enjoin, not because the Creek Nation has granted the franchise to another company, but because the defendants, without right or title, and without authority of law, are possessing themselves of their lands, and trespassing upon their rights; and, therefore, at the present time, the Creek Nation is a proper party to the suit, as it was at the time it was brought, and is now and was then entitled to its decree enjoining the defendants from further proceeding under their void and pretended authority.

Upon the whole case we hold:

1. That the act of the Creek council incorporating and granting an exclusive franchise to the plaintiff corporation to erect and operate a telephone system in the Creek Nation is in conflict with the interstate commerce clause of the constitution of the United States, in so far as it relates to foreign or interstate business.

2. That the Creek act was constitutional and valid in so

far as that it granted an exclusive franchise to the said corporation to conduct its business for the period of 10 years locally within the limits of the said nation.

3. That the contract of defendants with the town of Tulsa and the permission of the interior department to erect and operate a telephone system in the said town granted to the said defendants no rights as against the plaintiffs.

4. That the act of congress of March 3, 1901, devested from the Creek Nation and conferred upon the secretary of the interior all official and governmental control over all telephone and telegraph lines in the Indian Territory, whether local or interstate, from the passage of the act, and that the act is constitutstitutional; and therefore all franchises for the erection and operation of telephone and telegraph lines granted by the Creek Nation, are now, and since the passage of the said act have been, nugatory and void, leaving the plaintiff corporation without any right, and without any title, and without any standing at this time in court, although at the bringing of the suit they were entitled to their order of injunction. But a court of appeal will not reverse a decree, however erroneous, refusing an injunction, when, pending the appeal, the act which it is sought to enjoin is authorized by an act of the legislature. 2 High, Inj. 1701a. And for the same reason the court of appeals will not reverse a decree refusing an injunction, although erroneous, when, pending the appeal, by act of the legislature, the right or title upon which plaintiff's claim is founded has been taken away from him.

Therefore let the decree be affirmed in so far as it relates to the plaintiff the Muskogee National Telephone Company, and reversed as to the Creek Nation, and remanded, with directions to the court below, at the suit of the Creek Nation, by its decree to enjoin the defendants from further proceeding in the erection and operation of its said system of telephone until they shall have been fully authorized and empowered so to do by the secretary of the interior under the said act of March 3, 1901.