FARMERS ELECTRIC COÖPERATIVE CORPORATION *v.*
ARKANSAS POWER & LIGHT COMPANY.

4-9737                                        249 S. W. 2d 837

Opinion delivered June 2, 1952.

Rehearing denied July 7, 1952.

*Kaneaster Hodges,* for appellant.

*Claude M. Erwin, P. A. Lasley, House, Moses & Holmes* and *E. B. Dillon, Jr.,* for appellee.

*Sherrill, Gentry & Bonner, Fitzhugh & Cockrill* and *John D. Eldridge, Jr., amici curiae.*

GRIFFIN SMITH, Chief Justice. The point at issue is whether Farmers Electric Coöperative Corporation is entitled to serve patrons now within the city limits of Newport, but who were in a non-urban area when the Public Service Commission, through its certificate of convenience and necessity, authorized Coöperative to

occupy the territory. The controversial genesis is 1937 when the Commission allocated certain territories—some to Arkansas Power & Light Company and some to Coöperative.

Newport, pursuant to an election in 1947, undertook to extend its boundaries by incorporating approximately 2,000 acres east and northeast of the City. Because of numerous protests more than half of the territory was omitted, with the result that the area sought to be annexed was reduced to 960 acres. Some property owners were not satisfied with the revision and appealed to Circuit Court, where the City's annexation petition was denied. An appeal followed. See *City of Newport* v. *Owens,* 213 Ark. 513, 211 S. W. 2d 438. In the Court's opinion it was said that much of the testimony was directed to territory identified as Lakeview Addition, "and the evidence preponderates in favor of its annexation." An additional statement was: "But a tract of approximately 90 acres lying in the northern part of the territory proposed to be annexed was shown to be agricultural . . . It follows, therefore, that there is substantial evidence in the record going to show that a material portion of the land sought to be annexed—*i. e.,* the 90 acres—should not be annexed; and because of this evidence and the cases heretofore cited, we must affirm the Circuit Court judgment."

In consequence of further proceedings in Circuit Court some of the territory now claimed by Coöperative was annexed. However, prior to such annexation slightly more than thirteen hundred dollars had been spent by Coöperative for installations necessary to serve the out-of-city territory. The pleadings show that territory was annexed in 1946 and again in 1948. It is therefore probable that on remand of the Owens case Circuit Court entered its annexation order after eliminating the land identified in this Court's opinion because it was rural acreage not essential to the City's needs. After the 1946 annexation Coöperative spent $12,808.69 in that separate area, and following the judgment of annexation in 1948 it spent $14,128.80 in the district so joined.

A shoe manufacturing company, "Trimfoot," was located in the territory annexed in 1946. Its operations required a steady use of large quantities of electricity and for a considerable period Coöperative supplied the demand. Trimfoot was not a member of Coöperative and it is insisted it was not eligible to become a member. Attention is called to language used by this Court in *Ark.-La. Electric Coöperative, Inc.,* v. *Arkansas Public Service Commission,* 210 Ark. 84, 194 S. W. 2d 673, where it was said that, under Act 342 of 1937, "a coöperative may serve its members only." Trimfoot has now discontinued operations and the case here does not turn on a membership right.

Trimfoot preferred service by Arkansas Power & Light Company and instituted the proceedings resulting in this appeal by filing its petition with the Public Service Commission. An allegation was that the privately-owned power company would not render the service without specific authority, but it stood ready to serve the entire territory if a final order should show that under its indeterminate permit (Act 124 of 1921) the right to do so was exclusive. In other words it is the contention of Arkansas Power & Light that its subsisting permit extends to all parts of Newport; that the City by appropriate procedure enlarged its boundaries; that the municipality as a territorial entity now extends to and includes the annexed area, and that Coöperative's authority under its certificate of convenience and necessity to serve a rural population terminated when the City's necessities resulted in the program of expansion.

On the other hand Coöperative insists that it lawfully entered this particular field at a time when it was rural, and that irrespective of municipal development or enlargement, the area has been pre-empted. The Commission accepted the result of this view, and Circuit Court reversed.

The question is one presenting unusual difficulties.

The applicable statute, as heretofore mentioned, is Act 342 of 1937, Ark. Stat's, §§ 77-1101 to 1136. It

authorizes coöperatives to organize for the purpose of furnishing electrical energy to persons in rural areas who are not receiving central station service, limited to members of the organization. "Rural area" is defined as any not included within the boundaries of an incorporated or unincorporated city, town, or village *having a population in excess of 2,500 inhabitants,* and including both the farm and non-farm population. All persons in rural areas proposed to be served by a coöperative who are not receiving central station service shall be eligible to membership in such corporation.

Appellant first argues that Circuit Court was without jurisdiction because questions exclusively cognizable in a court of law were involved, whereas here the proceedings originated in the Public Service Commission. By § 31 of Act 342 coöperative corporations are exempted from jurisdiction of the Public Service Commission with the exception that before beginning any construction or operation they are required to secure a certificate of convenience and necessity. But in *Southwestern Gas & Electric Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S. W. 2d 378, it was said that the nature of the final act of the Commission "was the determination of the question [whether Southwestern Gas & Electric Co. or Rich Mountain Electric Coöperative, Inc.] should in the future own and operate the electric distribution systems in the towns of Hatfield and Cove." It was then said that in making such determination the Commission had power to consider and determine questions of law, or mixed questions of law and fact, "where such questions are germane and incidental to the final legislative act."

In the instant case the legislative Act excludes coöperatives from cities and towns where the population is in excess of 2,500. Newport, by reason of population, is admittedly within the proscribed territory unless we can say that the occupancy when the city's boundaries were extended leaves appellant free to continue its operations in spite of the fact that Arkansas Power & Light has a permit to serve the entire city.

A decision dealing with a kindred subject was handled by the Kentucky Court of Appeals,—*Truesdale* v. *City of Newport*, 90 S. W. 589, 28 Ky. L. Rep. 840. The City had granted a 20-year franchise to a gas company containing commitments respecting service to extensions. It was argued that the provisions of the franchise covering the collateral obligations rendered the grant void, but the Court said:

"If the ordinance had been silent as to the territory [thereafter] taken into the City, the meaning would have been the same. The contract is to supply the City of Newport and its inhabitants with gas. The limits of the City year by year determine the limits of the franchise. The City authorities have no power to contract for anything beyond the limits of the City and any contract they make can only bind property within the City; and when property is added to the City it necessarily falls within their jurisdiction."

No doubt the General Assembly failed to foresee the conflict here presented when Act 342 was being considered, else some provision would have been made for the awkward situation.

Apprehension is expressed that an affirmance of the Circuit Court judgment would establish a precedent under which a coöperative, after operating in good faith in an unquestioned rural area where in the beginning the population was such that a major power company would not extend lines to it, might suffer from the mere fact that it aided in developing the community. This, say appellees, might occur if the population passed 2,500. It must be conceded that the law does not provide for an extreme contingency of this kind, and we do not in this opinion, by inference or otherwise, suggest that a coöperative would be automatically ousted with attainment of the maximum population figure.

The circumstances here are quite different. The territory assigned appellant was contiguous to the city. The normal trend of a town or city is to build, hence one claiming rights pertaining only to rural territory enters

such an area with notice that the municipal corporation will very likely expand, as Newport did in this case. An anomalous situation would result if it should be judicially determined that rights essentially rural could not be disturbed by city expansion. The serious difficulty arises when compensation is considered. In the case at bar, however, appellee has offered to pay on a fair appraisal basis and it is not suggested that the litigants cannot agree. Their relationships are shown to have continued amicable with frequent acts of reciprocal assistance. Each, within its own field, is serving essential ends and is discharging these duties in a highly satisfactory manner.

We think the trial court correctly construed the law.

Affirmed.