**CADDO ELECTRIC COOPERATIVE, Plaintiff in Error,**

**v.**

STATE ex rel. John V. WHELAN, County Attorney, City of El Reno, Oklahoma, and Oklahoma Gas and Electric Company, Defendants in Error.

**No. 39509.**

Supreme Court of Oklahoma.

March 31, 1964.

Barney & Pain, Anadarko, for plaintiff in error.

John V. Whelan, County Attorney of Canadian County, Oklahoma, for defendant in error State ex rel. John V. Whelan.

Porta & Weaver, El Reno, for defendant in error City of El Reno.

Rupert, Fogg, El Reno, Houston W. Reeves, Rainey, Flynn & Welch, Oklahoma City, for defendant in error Oklahoma Gas & Electric Co.

Walter Arnote, City Atty., McAlester, Charles Norman, City Atty., Tulsa, Harold Gasaway, City Atty., Enid, Donald Royse, City Atty., Elk City, Andrew Riddle, City Atty., Ardmore, Lawrence Green, City Atty., Ada, Andrew Wilcoxen, City Atty., Muskogee, Roy Semtner, Municipal Counselor, Oklahoma City, Robert T. Rice, City Atty., Edmond, N. A. Smith, City Atty., Purcell, amici curiae.

PER CURIAM:

In 1946 and 1949 Caddo Electric Cooperative, acting under the powers granted by the Rural Electric Cooperative Act of 1939, constructed distribution lines into a rural area extending one-half mile west from the city limits of the City of El Reno, a "home rule" city of more than 1,500 inhabitants. Cooperative proceeded then and now to serve electric current to itself, that is, to its members, residing in such "area."

In 1954 and 1955 this "area" as then platted was annexed to the City of El Reno as Town Acres Addition and Town Acres Second Addition to the City of El Reno.

After this area was annexed, Oklahoma Gas & Electric Company, a public utility, built distribution lines into this annexed area, under its franchise then and now existing, from the City of El Reno. Thereafter the City Commission of the City of El Reno passed resolutions ordering the defendant to remove its lines and property from the streets and alleys of the said area, being then a part of the City, and to cease serving electric current to itself, that is to its members, domiciled in such area. Cooperative did not comply with these resolutions, but continued to use its distribution lines in serving its members in the annexed area.

Thereafter, this action was filed by State ex rel. John V. Whelan, County Attorney; The City of El Reno, Oklahoma, and Oklahoma Gas & Electric Company, as plaintiffs, seeking an injunction against the Caddo Electric Co-Operative, to prevent it from maintaining its poles and lines and distributing electric energy along and across the streets and alleys and public places of the annexed areas in the City. From a judgment in favor of plaintiffs enjoining defendants from maintaining and operating its lines in the annexed areas, the defendant Co-Operative has appealed.

Since the Federal program of rural electrification was a new program many of the state legislatures found it necessary to enact legislation to implement this program. In 1939 the Oklahoma Legislature enacted what it called the "Rural Electric Cooperative Act." 18 O.S.1961 § 437 et seq. Subsequent to rendition of the trial court's judgment in this case subsections 437.2(k) and 437.28(a) were amended by the Legislature in 1961. Since neither party seriously contends that the amendments materially affect their rights in this case, and since the application thereof might infringe upon the provisions of Art. 5, Sec. 52, Oklahoma Constitution, which provides that the Legislature shall have no power to take away such cause of action, or destroy any existing defense after suit has been commenced, we have concluded not to consider these amendments in this decision, and all statutory references in this opinion shall refer to the statute as existing prior to 1961.

The original act provided, among other things, that Cooperative non-profit, membership corporations could be organized for the purpose, among others, of supplying electrical energy to itself, that is, to its members, and promoting and extending the use of electric energy among its members in rural areas.

The act further provided, in part, material to this action:

"Sec. 437.2 A cooperative shall have power:

" * * *

"(b) To have an existence limited to fifty (50) years, the same to be subject to renewal upon expiration of the term limited in its charter. * * *

"(d) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply and dispose of electric energy in rural areas to its members.

" * * * * * *

"(k) To construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys and bridges, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect of the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon Corporations, constructing or operating electric transmission and distribution lines or systems;"

"Sec. 437.28 Definitions. In this Act, unless the context otherwise requires;

"(a) 'Rural Area' means any area not included within the boundaries of any incorporated or unincorporated city, town or village, having a population in excess of fifteen hundred (1500) persons, * * *"

It will be noticed that the legislative grant to use the roads, highways, streets, and alleys is not specifically limited as to duration of time.

We are cited to decisions and constitutional and statutory provisions dealing with municipal franchises. We deem it not necessary in deciding this case to engage in extensive discussion of these principles. It is undisputed that Co-Operative is without any municipal franchise from the City of El Reno; that Oklahoma Gas and Electric does have such a franchise; and that there is some conflict in their operations in the area here involved.

Co-Operative contends that under the original authorizing act above referred to it may continue this operation in this area without any municipal franchise and the adversary contends to the exact contrary.

We are also cited to decisions dealing with operation by other facilities without any franchise and as to the necessity for such a franchise, but those rules are not exactly applicable. They apply to operations of public utilities engaged in furnishing services to the general public and not to a cooperative such as is here involved. Those rules were formulated and those cases de-

cided before there existed any such co-operative.

Co-Operative contends that it has a vested right to maintain those lines which it had constructed in this area prior to annexation which is nonrevocable by the City, unless there is something in the statute which revokes the rights of co-operative upon annexation.

Plaintiffs contend that under the statute, section 437 et seq., supra, and under its charter powers, the Co-Operative is not authorized to maintain its lines and serve its members in the annexed areas, now a part of a city.

At the time the lines were installed, Section 437.2 provided in part:

"A cooperative shall have power:

\* \* \* \* \* \*

"(k) To construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys and bridges, and upon, under and across all publicly owned lands, \* \* \*"

Plaintiffs contend that this grant of power is a qualified grant and they invite attention to the proviso in Sec. 437.2(k) wherein it is provided that the power is:

"subject \* \* \* to the requirements in respect to the *use* of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon Corporations, constructing or operating electric transmission and distribution lines or systems; \* \* \* (emphasis ours)

Plaintiffs contend that this proviso clearly means that the Co-Operative must have a city franchise before it may operate within the city. Defendant contends that this proviso only requires it to comply with any reasonable regulations that may be made by the city, after annexation, with reference to the location of poles and lines so as not to interfere with normal traffic upon the roads, streets and alleys.

Section 437.2(k) specifically grants co-operatives the power to construct, maintain and operate electric transmission and distribution lines upon all roads, highways, streets, alleys \* \* \* and across all publicly owned lands.

Other states have held that the limitation imposed on rural electric cooperatives, by statute, to retain and maintain its lines after annexation is a limitation to be determined at the time the line is installed. Their statutes, however, imposed restrictions upon membership, and their *use* of the lines was held to be available only to those members who had made application for service prior to annexation. The holding was in effect that the maintenance of the line, and the members to be served, were limitations to be determined respectively at the time of construction and at the time application for service is made.

In editorial syllabus No. 4 in City of Moultrie, et al. v. Colquitt County Rural Electric Company (1955), 211 Ga. 842, 89 S.E.2d 657, it is said:

"Limitation imposed on rural electric companies by statute allowing corporations to operate electrical lines in rural areas not receiving service from municipal corporation or a corporation regulated by the Public Service Commission, is a limitation to be determined at time application for service is made."

In editorial syllabus No. 4 in Pee Dee Electric Membership Corporation v. Carolina Power & Light Company, et al. (1961), 253 N.C. 610, 117 S.E.2d 764, it is said:

"Electric membership corporation serving area annexed to town could continue to operate only facilities existing on date of annexation, and could continue to serve, with such facilities, only those who were its members on that date."

See, also, Duke Power Company v. Blue Ridge Electric Membership Corporation (1961), 253 N.C. 596, 598, 117 S.E.2d 812; and State ex rel. Southwestern Gas & Elec. Co. v. Upshur Rural Electric Cooperative Corp. (1957), 156 Tex. 633, 298 S.W.2d 805.

Our discussion here is intended to deal only with the question of the right to maintain the lines after annexation. The extent of the use will not be important unless the lines may be maintained.

Plaintiffs assert rather vigorously that the Arkansas case of Farmers Electric Co-Op. Corp. v. Arkansas Power & Light Co. (1952), 220 Ark. 652, 249 S.W.2d 837, supports the view that Caddo Electric Co-Operative may not continue to maintain its lines in the areas annexed to El Reno.

At first glance the case does seem to support their position. However, closer examination reveals that the Arkansas Court was dealing with a problem not involved in our case. In fact in the cited case Arkansas Power & Light Company had been given an *exclusive* permit under its 1937 certificate of convenience and necessity to provide electric services throughout the city of Newport. A Kentucky case was cited as authority for the proposition that the franchise or permit granted extended to areas later annexed to the city. An earlier Arkansas case was cited as authority for the proposition that when a permit is granted by the Public Service Commission of that State such act becomes a "final act of the Commission." It then concluded in effect that Arkansas Power & Light Company had been *exclusively* franchised in 1937 to serve the entire city of Newport including its expansions, and that to permit the electric cooperative to continue operations in the annexed areas would constitute an infringement upon the exclusive franchise rights of the public utility company. It then observed that their Rural Electric Cooperative Act excludes cooperatives from serving in cities and towns with populations in excess of 2,500 inhabitants.

The following language of the Arkansas Court indicates that the result might have been different if the *exclusive* permit or franchise of the Arkansas Power & Light Company had not been involved, for it was said:

"Apprehension is expressed that an affirmance of the Circuit Court judg-ment would establish a precedent under which a cooperative, after operating in good faith in an *unquestioned rural area* where in the beginning the population was such that a major power company would not extend lines to it, might suffer from the mere fact that it aided in developing the community. This, say appellees, might occur if the population passed 2,500. It must be conceded that the law does not provide for an extreme contingency of this kind, and *we do not in this opinion, by inference or otherwise, suggest that a cooperative would be automatically ousted with attainment of the maximum population* figure." (Emphasis supplied)

It seems to us that the Arkansas case turned more upon the definition of "Newport" and the finality of the orders of their Public Service Commission in establishing boundaries in 1937, than it did upon limitations imposed in their Rural Electric Cooperative Act.

 Under the authority of the cases from Georgia, North Carolina, and Texas, we think it is clear that Caddo Electric has the right to continue serving those members who were being served prior to annexation.

 Since the by-laws of the Co-Operative involved herein authorize the transfer of membership, and the statute does not forbid, 18 O.S.1961 § 437.7, as distinguished from the Texas case of State ex rel. Southwestern Gas & Elec. Co. v. Upshur Rural Electric Cooperative Corp., supra, the Co-Operative should not be enjoined from continuing to use its pre-annexation installed service lines and from rendering service to any person subsequently properly acquiring a transferred membership.

The next question is whether new members may be added to the distribution line subsequent to annexation. We have found no case which is authority for allowing new members to be added to the distribution line after the annexation. The case of State ex rel. Southwestern Gas & Elec. Co. v.

Upshur Rural Electric Cooperative Corp. supra, and the cases hereinbefore cited from Georgia and North Carolina are authority for disallowing the connection by new members, except transferees, as provided for in the following paragraph.

■ We hold that the Co-Operative may add new members as provided in Sec. 437.2(d) to its pre-annexation distribution lines, but only in so far as they may be substituted as transferee members where previous pre-annexation members have resigned, moved away or for some other reason have discontinued their membership in the Co-Operative. Provided, however, that only subsequent occupants of those houses or places of business actually connected to the Co-Operative lines as of the date of the annexation would be eligible as new or transferee members.

■ Plaintiffs have contended in this case that if Section 437.2(k) and its acceptance by the Co-Operative in constructing its lines, is construed as a grant of power to operate the facilities in a municipality then in effect there would exist a "franchise" in violation of Article 18, Secs. 5(a) and 5(b) of the Oklahoma Constitution, citing City of Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 282 P. 640, supra, and the cases which follow it. We do not agree.

In the cited case the Legislature was interfering with a municipally granted franchise, and interfering with the right of the people of the city to grant, extend, or reject a previously granted city franchise contrary to the provisions of Art. 18, Secs. 5(a) and 5(b) of the Constitution. In the instant case the Legislature has not attempted to destroy a home rule city's right to grant franchises.

■ If we correctly understand the facts in this case the defendant constructed "a leg of the distribution line" into an area after that area had been annexed to the city, and serves one member from that line. This leg of the distribution line appears to have been constructed on or about May 8, 1956, and subsequent to the annexation proceed-ings. Under our holding herein the Rural Electric Cooperative Act does not authorize this construction and this line must be removed.

We have given careful consideration to all other contentions of the plaintiffs as to why the judgment of the trial court should be affirmed and find them without substantial merit.

The judgment of the trial court is reversed, except in so far as it requires the defendant to remove that portion of the distribution line which was constructed in 1956 and after annexation proceedings had been completed. As to that portion of the distribution line constructed after annexation the judgment of the trial court is affirmed and the trial court is directed to enter appropriate orders for the cessation of service to the member affected, and for removal or other disposition of this portion of the distribution line.

BLACKBIRD, C. J., and WELCH, DAVISON, WILLIAMS and IRWIN, JJ., concur.

JACKSON and BERRY, JJ., concur specially.

HALLEY, V. C. J., and JOHNSON, J., dissent.

JACKSON, Justice (concurring specially).

In State ex rel. Southwestern Gas & Elec. Co. v. Upshur Rural Electric Co-Operative (1957), 156 Tex. 633, 298 S.W.2d 805, it was pointed out that the Texas statute provided that (1) an inhabitant or person receiving central station service *may not become a member;* and (2) one living in a town or city having in excess of 1500 people *may not become a member.* Under the Texas statute items numbered (1) and (2) are not limitations upon the Cooperative but limitations upon who may become a member.

Our statute, 18 O.S.1961 § 437.7, does·not contain the limitations upon membership

which were present in the Texas case, and numbered (1) and (2), supra. The limitations imposed upon membership in an Electric Cooperative in Oklahoma is that "No person who is not an incorporator shall become a member of a cooperative unless such person shall agree to use electric energy * * * when such electric energy shall be available through its facilities."

In Pee Dee Electric Membership Corp. v. Carolina Power & Light Co., et al. 1961), 253 N.C. 610, 117 S.E.2d 764, that court followed the holding in State ex rel. Southwestern Gas. & Elec. Co. v. Upshur Rural Electric, supra, apparently without noticing that under their statute the only limitation upon membership was that "no person shall become or remain a member unless such person shall use energy supplied by such corporation."

The Georgia case of City of Moultrie et al. v. Colquitt County R. E. Co. (1955), 211 Ga. 842, 89 S.E.2d 657, deals with a cooperative which had placed a *temporary* line into an area to assist the developer. At the time of annexation it had no permanent electrical installations in the area. The court correctly held that it had acquired no "property rights" in the annexed area and that it had no grounds for equitable relief. It seems clear that the Co-Operative in the Georgia case had not acquired a "vested right" resulting from the construction of *permanent* electrical installations into the area prior to annexation.

I find nothing in our statute which forbids the addition of new members, after annexation, to a distribution line which was constructed prior to annexation. Unless the statute does forbid, then it seems to me that the Cooperative in the instant case acquired a vested right to use its pre-annexation distribution lines to load capacity by adding new "drops", transformers, and meters after annexation. See in this connection City of Beverly Hills v. City of Los Angeles (1917), 175 Cal. 311, 165 P. 924, wherein the City of Los Angeles was permitted to complete its previously projected water line through the unincorporated territory of Beverly Hills although not constructed prior to the incorporation of Beverly Hills as a municipality. See also the Indian Territory case of Muskogee National Telephone Co. v. Hall (1901), 4 Ind.T. 18, 64 S.W. 600.

I would hold that the Cooperative may add new "drops", transformers, and meters for serving new members who may apply for service from distribution lines which were constructed prior to annexation.

I am authorized to state that IRWIN, J., concurs with the views herein expressed.

BERRY, Justice (specially concurring).

I agree with the holding of the majority opinion.

Generally the right granted by the Legislature to carry on a business with the right to the use of highways, roadways and other public properties, to set poles for electric lines for such purpose, is regarded as a franchise. Also, generally, the obligations arising thereunder come within the protection of the Federal Constitution. A franchise, however, must be taken subject to existing laws, both statutory and constitutional.

In the case before us, the Co-op built lines and serviced its members. This involved the use of its legislative franchise, and in so doing acquired property rights in the materials used and contractual obligations arising with its members.

After the area involved was taken into the city under Okla.Const. Art. XVIII, Secs. 5(a) and 5(b), the city alone had the authority to grant, extend or renew these services under its power as a municipality. This right, however, did not operate to set aside and destroy the property rights or the contractual obligations which were assumed and acquired prior to the annexation by the city.

I am of the opinion that to permit the Co-op to extend its lines and services within the annexed area would be repugnant to

existing statutes and the constitutional provisions. I am also of the opinion that to require the Co-op to remove its lines and to terminate its services to its members by a mere city ordinance would be a denial of the "due process" clause of our Constitution.

HALLEY, Vice Chief Justice (dissenting).

I dissent to the majority opinion for several reasons. Limitations of space and time prevent a full discussion of all of these. I will set out some. Caddo Electric is not permitted under its corporate charter to dispose of electric power in a municipality with a population in excess of 1,500 inhabitants. 18 O.S.1961 § 437.1, provides as follows:

"Cooperative, non-profit, membership corporations may be organized under this Act for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas. Corporations organized under this Act and corporations which become subject to this Act in the manner hereinafter provided are hereinafter referred to as 'cooperatives.'"

Under the same Title at Section 437.28, "Rural Area" is defined as follows:

"(a) 'Rural Area' means any area not included within the boundaries of any incorporated or unincorporated city, town or village, having a population in excess of fifteen hundred (1500) persons;"

Clearly under these two provisions of our statutes a rural electric cooperative does not have the authority to dispose of electrical power in the City of El Reno which has a greater population than 1,500.

My next reason for dissenting is Caddo Electric, a corporation, had no franchise to sell or otherwise dispose of electric power in the City of El Reno. Section 7 of Article VI of the Charter of the City of El Reno is as follows:

"The City of El Reno shall never grant, extend or renew a franchise without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and no proposed ordinance granting or extending the time of any franchise shall be put upon its final passage within thirty days after its introduction nor until it has been published not less than once a week for four consecutive weeks in two daily newspapers of general circulation, published in said city, then said ordinance shall be published for the required time in all of the weekly papers published in said city."

It is not necessary because of the clearness of our statutes on this point to offer further argument but I do say that the case of Farmers Electric Cooperative Corp. v. Arkansas Power and Light Co., 220 Ark. 652, 249 S.W.2d 837, sustains my position.

Article XVIII § 5(a) of our Constitution is as follows:

"Grant, extension or renewal—Approval by Voters—Term

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years."

It is admitted that the Caddo Electric Cooperative had not complied with or conformed to this section. It is no concern of ours that the City of El Reno extended its corporate boundaries. There is no charge that it was illegally done.

When an area is taken into the limits of a municipality everything contained therein becomes amenable to the laws and

regulations of the municipality. Here the Caddo Electric had no semblence of a franchise and this it must have to operate in the City of El Reno. To permit it would be contrary to Section 5(a) of Article XVIII of the Oklahoma Constitution.

In my opinion it is erroneous to say that Caddo Electric acquired a property right in electrical lines in an area later brought into the corporate limits of a municipality. To me there is no difference in stopping a cooperative from carrying on business in a municipality where it has no franchise than if it had had a franchise and it had been legally revoked.

It was never intended that rural electric cooperatives should operate in competition with electrical plants municipally owned or privately owned plants operating under a franchise from an incorporated city or town over 1,500 inhabitants. To permit it is contrary to the genius of rural electric cooperatives. Neither was it intended that they should be money making institutions. They were created to bring electrical service to areas where it was not profitable to privately owned systems, and for that reason were given privileges not extended to privately owned operations.

I dissent.