** NOTE: See Opinion No. 72-139 ** WATER DISTRICTS — FRANCHISES The creation of a rural water district, pursuant to the Water and Sewerage District Act, constitutes a "franchise" within the land area as authorized by the County Commissioners in the creation of a district. After a city or town annexes territory originally included in a rural water district, the rural water district has the right to continue serving those members who were being served prior to annexation. Any privately owned water system which has a franchise from the city, may operate within the newly annexed area in accordance with the powers and authority granted to it under its franchise agreement. Opinion No. 68-211 is overruled insofar as it conflicts with the opinion expressed herein. ** (NOTE): See Opinion No. 72-139 ** The Attorney General has considered your request for a formal opinion contained in your letter dated January 18, 1971. You ask that we reexamine Opinion No. 68-211 in view of additional legal authorities which have been submitted to you by the Oklahoma Association of Municipal Attorneys, which are contrary to the opinion expressed in Attorney General's Opinion 68-211. In Attorney General's Opinion No. 68-211, approved January 16, 1969, the following questions and opinions were given: 1. "Does the creation of a rural water district give the water district a `franchise' for sale of water in the land area included in the water district?" OPINION: "The creation of a rural water district pursuant to the Water Sewerage District Act constitutes a `franchise' within the land area as authorized by the County Commissioners in the creation of the district." 2. "When a city or town annexes territory included in the rural water district, what are the rights with reference to service of water by the city and the rural water districts? OPINION: "Once the district is created and properly constituted, it has exclusive right to serve the area notwithstanding annexation of the area or any part of the area by a city or town. The annexing city has no right or authority to interfere with the legislative grant and cannot interfere with the operation of water district or in any manner compete with the water district until such time as the district is terminated as provided by law." The Attorney General is of the opinion that answer to the first question be affirmed and adopted, and that the answer to the second question be overturned as not being a correct expression of the law. The following is a discussion of the legal authorities upon which this opinion is based. The statutes governing the creation and operation of rural water and sewerage districts are found at 82 O.S. 1301 [82-1301] through 82 O.S. 1323 [82-1323] (1970). The provisions of Section 82 O.S. 1306 [82-1306] provides that the rural water district shall be a body politic incorporate and an agency and legally constitute authority of the State of Oklahoma for the public purposes set forth in this Act. Section 82 O.S. 1309 [82-1309](4) of the Act grants to every rural water district the power to secure the payment of its notes or obligations by mortgaging or pledging any or all of its property including "franchises" Section 82 O.S. 1309 [82-1309](8) provides that rural water districts may obtain easements or other similar property rights to use any street, road, alley, highway or any right-of-way in lands owned by the State or any political subdivision thereof, but that the location of these lines and facilities "be concurred in by the governing of appropriate bodies of the cities, counties or state, which has jurisdiction over said property." Also, "provided, that by petition of a majority of the legal electors of the city or town, permission may be granted to the district to use the streets and alleys for the purposes provided for in this Act." Upon the authority of these statutory provisions, it is not disputed that the rural water district requires a franchise. However, under the franchise so acquired, they attain to nothing more than what is expressly granted to them under the legislative grant. That is, the right to use streets, roads, alleys, highways or other rights-of-way for easement purposes. There is nothing in the Act which would exclude another entity from acquiring like rights. To say that the grant of easements to the rural water districts to use the roads, streets, alleys, and other right of way for the purposes of installing and maintaining their systems would exclude the operation of like businesses, would have the practical effect of granting an exclusive franchise to the rural water district. The granting of exclusive franchises is prohibited in the State of Oklahoma by the provisions of Article II, Section 32 which reads: "Perpetuities and monopolies are contrary to the genius of a free government,. and shall never be allowed, nor shall the law of primogeniture or entailments ever be enforced in this State." In this same regard, see Sheldon v. Grand River Dam Authority, 76 P.2d 355, 363 (Okl. 1938). The Court in this case held that the act creating the Grand River Dam Authority (Title 82 O.S. 861-888 [82-861] — [82-888]): "(b) Does not create a monopoly in violation of Section 32 of Article 2 in that nothing in the Act excludes the operation of like businesses." The central issue involved can be phrased as follows: What is the effect upon the respective operations of privately owned water systems operating within a municipality and rural water districts operation in a "rural area" after the rural area is changed to urban as a result of annexation by the municipality? There are no reported case decisions dealing with this issue as it specifically involves rural water and sewerage districts, but there are reported case decisions dealing with the same issue involving rural electric cooperatives. The Rural Electric Cooperative Act, 18 O.S. 437 [18-437] (1961), et. seq., contains very similar provisions to those governing rural water districts. The person signing the articles and their associates, successors and assigns are a body politic and corporate. Cooperatives have the power to own, mortgage and pledge "franchises". Also, they are empowered to maintain and operate electric transmission and distribution lines along or across all public thoroughfares and across all publicly owned land, "subject, however to the requirements in respect to the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof. . .". The case of Caddo Electric Cooperative v. State,391 P.2d 234 (Okl. 1964) dealt with a fact situation similar to the one contained in your opinion request. The Caddo Electric Cooperative constructed distribution lines into a rural area extending one-half mile west from the city limits of El Reno, Oklahoma. At a later time, this area was platted and annexed to the city of El Reno. After the annexation, a public utility company built distribution lines into the annexed area. Thereafter, the City Commission of El Reno passed resolutions ordering the Caddo Electric Cooperative to remove its lines and property from the streets and alleys in the annexed areas. The Cooperative failed to do so and an injunction action was filed by the County Attorney against the Cooperative to prevent it from maintaining its poles and lines and distributing energy along and across the streets and alleys and public places of the annexed area in the city. A judgment was rendered in favor of the plaintiff in the trial court and the Cooperative appealed. On appeal, the Supreme Court of the State of Oklahoma held, in substance, as follows: "Caddo Electric had the right to continue serving those members who were being served prior to annexation." Since the by-laws of the Cooperative authorized the transfer of membership, and the statute did not forbid the same, the court held that the Cooperative should not be enjoined from continuing to use its preannexation installed service lines, and from rendering service to any person subsequently properly acquiring a transferred membership. The Cooperative could add new members, as transferees, to its preannexation distribution lines, but only insofar as they were substituted as transferee members where previous pre-annexation members had resigned, moved away or for some other reason had discontinued their membership in the Cooperative. Only subsequent occupants of those houses or places of business actually connected to the Cooperative lines as of the date of the annexation could be eligible as new or transferee members. The Court further held that this procedure did not interfere with the right of the people of a city to grant, extend, or reject a city franchise contrary to the provisions of Article XVIII, Section 5(a) and Article XVIII, Section 5(b) of the Constitution. The Court cited as supporting authorities for its holding the following cases: City of Moultrie v. Colquitt County Rural Electric Company, 89 S.E.2d 657 (Ga. 1955); Pee Dee Electric Membership Cooperation v. Carolina Power Light Company,117 S.E.2d 764 (N.C. 1961); Duke Power Company v. Blue Ridge Electric Membership Cooperation, 117. S.E.2d 812 (N.C. 1961); State ex rel Southwestern Gas Electric Company v. Upshur Rural Electric Cooperative, 298 S.W.2d 805
(Texas 1957). There is very little, if any, difference between the statutory authority granted to rural water districts and rural electric cooperative associations. The Supreme Court of Oklahoma would probably treat the fact situation contained in your opinion request in the same manner that it treated the similar question involved in the Caddo Electric Cooperative v. State opinion, supra. It is the opinion of the Attorney General that the creation of a rural water district, pursuant to the Water and Sewerage District Act, constitutes a "franchise" within the land area as authorized by the County Commissioners in the creation of a district. After a city or town annexes territory originally included in a rural water district, the rural water district has the right to continue serving those members who were being served prior to annexation. Any privately owned water system which has a franchise from the city, may operate within the newly annexed area in accordance with the powers and authority granted to it under its franchise agreement. Opinion No. 68-211 is overruled insofar as it conflicts with the opinion expressed herein. (Odie A. Nance)