PEE DEE ELECTRIC MEMBERSHIP CORPORATION v. CAROLINA POW-
ER & LIGHT COMPANY, ORIGINAL DEFENDANT; AND THE TOWN OF
ROCKINGHAM, BELER DIXON AND RAYMOND TREECE, ADDITIONAL
DEFENDANTS.

(Filed 20 January, 1961.)

**1. Municipal Corporations § 18:        Electricity § 2—**

Where a power company has a franchise with a municipality to pro-
vide street lights and sell electricity to citizens of the municipality, upon
the annexation of territory by the municipality the power company has
the legal right and duty to serve the customers within the territory an-
nexed except to the extent it is precluded from doing so by valid contract
with another public utility in the area.

**2. Electricity § 2—   Membership in electric membership corporation
is not terminated by annexation by municipality.**

Although, under Federal and State legislation relating to rural elec-
trification, an electric membership corporation is created to operate only
in rural areas and to serve members who are residents of such areas,
when an area served by a membership corporation becomes an urban
area by reason of annexation by a municipality, the electric membership
corporation may continue to serve from its distribution lines constructed
prior to the annexation persons who were theretofore members and de-
cide to continue their membership and to receive service from such
corporation, but persons in the annexed area who were not members
prior to the annexation are not eligible for membership, since eligibility
for membership is to be determined as of the date application for mem-
bership is made.

**3. Same:   Municipal Corporations § 18—**

Upon annexation by a municipality of a part of the territory served
by an electric membership corporation, such corporation is entitled to
continue service to its customers living within the annexed area, and
may continue to maintain for this purpose its lines constructed in the
area prior to the annexation, and neither the municipality nor the power
company having a franchise from it is entitled to restrain the member-
ship corporation from continuing to provide such service or to enjoin it
from maintaining lines theretofore constructed and necessary for this
purpose or to require it to dispose of or dismantle such lines.

PARKER, J., concurring.

MOORE, J., joins in concurring opinion.

APPEAL by plaintiff from *Fountain, Special Judge,* May-June Civil
Term, 1960, of RICHMOND.

Plaintiff (Pee Dee) instituted this action May 27, 1958, against
the Carolina Power & Light Company (Power Company). There-
after, the Town of Rockingham (Rockingham), a municipal corpora-
tion, and the individual defendants, Dixon and Treece, were permitted
to intervene as additional parties defendant.

North Carolina Electric Membership Corporation, of which Pee Dee is a member, was granted leave to appear as *amicus curiae.*

Pee Dee seeks to enjoin the Power Company, and the Power Company and the Town of Rockingham seek to enjoin Pee Dee, from distributing electric power in a portion of an area (Richmond County) known as Knob Hill, which, by annexation on January 9, 1957, was included within the corporate limits of Rockingham. Dixon and Treece, who own residences in Knob Hill, demand service by the Power Company.

The court based its judgment on stipulated facts.

The charter (1940) of Pee Dee, an electric membership corporation, provides that its operations "shall be principally conducted in those parts of the county or counties of Anson, Union, Stanly, Montgomery, Richmond, and Scotland, State of North Carolina, which are not now served or which are inadequately served with electric energy, or which are now served by the Anson Mutual Electric Corporation." In 1945, this charter provision was amended so as to add Moore County to Pee Dee's territory.

In 1940, Pee Dee constructed distribution lines in Knob Hill to serve four residences. All of Knob Hill was within one mile of the original city limits of Rockingham. There were sixty-six residences in Knob Hill on January 9, 1957, when Knob Hill was annexed to and became a part of Rockingham. All of these residences were then served by Pee Dee.

Pee Dee's distribution lines, constructed prior to January 9, 1957, are located along, and at some places cross, what are now public streets of Rockingham. Where Pee Dee's lines cross private property, the construction thereof was permitted by the owner or owners.

Rockingham has not granted, and refuses to grant, to Pee Dee a franchise permitting it to operate within its corporate limits or to construct or maintain its lines along or across what are now public streets of Rockingham.

Prior to January 9, 1957, the Power Company did not supply electricity to any residence in Knob Hill and had no lines or facilities therein. By merger, on or about February 24, 1926, the Power Company acquired the franchise granted by Rockingham to Yadkin River Power Company on November 23, 1911, which, for the term of sixty years, granted permission "to construct and maintain its lines for the transmission of electricity along, over and under the highway of the Town of Rockingham, . . . and to conduct and carry on within the said Town of Rockingham, the business authorized by and under the terms of" its charter. Pursuant to this franchise, the Power Com-

pany (and its said predecessor) supplied electricity to residences within the corporate limits of Rockingham; and, under successive contracts, supplied electricity for various municipal functions, including street lighting.

On January 16, 1957, Rockingham requested Pee Dee, within thirty days, to work out an arrangement for the transfer of its facilities to the Power Company. Pee Dee refused to comply with this request. On February 5, 1957, Pee Dee proposed that it be permitted to provide street lighting in Knob Hill. Upon rejection by Rockingham, this proposal was "withdrawn and nullified" by Pee Dee. On August 6, 1957, Rockingham instructed the Power Company to install street lights and a fire alarm system in Knob Hill.

Prior to August 28, 1957, the Power Company, through its contractor, Utilities Construction Company, "began the work of installing poles and lines to furnish street lighting in the Knob Hill area"; and on that date Pee Dee instituted an action in the Superior Court of Richmond County for injunctive relief. An *ex parte* temporary restraining order issued August 28, 1957, was dissolved by an order of September 11, 1957. Pee Dee then took a voluntary nonsuit in said action. Thereafter, the "Power Company constructed in said Knob Hill area distribution lines and facilities adequate to supply said street lighting and all other electrical needs of the inhabitants of said area."

The distribution lines constructed by Pee Dee in Knob Hill prior to January 9, 1957, are also "adequate in capacity to supply all the electricity presently needed in said Knob Hill area, by merely adding extensions, transformers, etc., as may be required."

In some places, the Power Company's distribution lines are parallel to and within three hundred feet of the lines Pee Dee had constructed prior to January 9, 1957. The residences of Dixon and Treece are within three hundred feet of the distribution lines of Pee Dee and are within three hundred feet of the distribution lines of the Power Company.

On or about September 20, 1941, Dixon became a member of Pee Dee; and from then until July 22, 1958, Dixon's residence was served by Pee Dee. On May 20, 1958, Dixon applied to the Power Company for electrical service to his residence; and, upon the Power Company's acceptance of said application, Dixon notified Pee Dee to discontinue its service to his residence.

On May 15, 1958, Treece, who was then constructing a residence in Knob Hill, applied to the Power Company to supply his residence with electrical service. His application was accepted.

The Power Company was restrained from supplying electrical service to the Dixon and Treece residences by an *ex parte* order issued herein on May 27, 1958. This was modified by order of July 21, 1958. Since July 22, 1958, the Power Company has been serving the Dixon and Treece residences. (Note: The order of July 21, 1958, dissolved the temporary restraining order except as to persons who were *then* members of Pee Dee.)

A contract entered into under date of January 5, 1956, provides for the sale by the Power Company to Pee Dee of all power and energy required for its electric system in excess of that purchased by Pee Dee from the United States of America (generated in the Government's plant at John H. Kerr Dam Reservoir), at rates set forth on an attached schedule relating to the sale of electricity "to a nonprofit rural electric membership corporation for sale to ultimate consumers." Article 8 of this contract contains these provisions:

"(a) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

"(b) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines, but no service shall be rendered from such interconnecting facilities in competition with the other party."

Prior contracts of November 3, 1950, and July 1, 1951, superseded by said contract of January 5, 1956, had contained provisions similar to those set forth in said Article 8. The record is silent as to whether said contract of January 5, 1956, was submitted to and approved by the North Carolina Utilities Commission. The prior contract of July 1, 1951, was drafted in accordance with a form contract theretofore formally approved, without notice or hearing, by the Utilities Commission.

When said contracts were executed, Pee Dee did not have any lines or facilities or any members within the corporate limits of any municipality.

The court entered judgment in complete accord with defendants' contentions. Pee Dee's prayer for injunctive relief was denied. Pee Dee was enjoined from supplying electric service within the corporate limits of Rockingham, including Knob Hill, and from interfering in any manner with the activities of the Power Company in supplying such service. Pee Dee was enjoined from maintaining its lines and facilities "upon, along or over the streets, roads and public ways of the Town of Rockingham," and ordered to dispose of or dismantle and remove its lines and facilities within a specified time. The Power Company was ordered to perform "its franchise duty" by supplying electricity to the residences of Dixon and Treece in accordance with its contracts with these individuals. (Note: The court entered a further order staying designated provisions of said judgment pending final disposition of Pee Dee's appeal therefrom.)

Pee Dee, appealing from said judgment, sets forth 35 assignments of error based on 121 exceptions.

*Branch & Hux, W. G. Pittman and Brock & McLendon for plaintiff, appellant.*

*W. Reid Thompson, A. Y. Arledge and Bynum & Bynum for defendant Carolina Power & Light Company, appellee.*

*A. A. Webb and C. B. Deane for additional defendant Town of Rockingham, appellee.*

*Leath & Blount for additional defendants Dixon and Treece, appellees.*

*William T. Crisp for North Carolina Electric Membership Corporation, amicus curiae.*

BOBBITT, J. The basic contentions of the respective parties may be stated as follows:

Pee Dee contends: (1) The provisions of Article 8 of the contract of January 5, 1956, are applicable to Knob Hill. (2) In accordance therewith, it is entitled to enjoin the Power Company from serving residences within three hundred feet of the distribution lines constructed by Pee Dee prior to January 9, 1957. (3) It is entitled to serve all residences within three hundred feet of its said lines notwithstanding the annexation of Knob Hill by Rockingham and the refusal of Rockingham to grant it permission (franchise) to operate within its corporate limits and construct and maintain its lines over what are now public streets of Rockingham.

The Power Company contends: (1) The provisions of Article 8 of the contract of January 5, 1956, do not apply to Knob Hill but

are applicable only to areas in which Pee Dee is authorized to operate, namely, rural areas. (2) Upon annexation by Rockingham, Knob Hill ceased to be a rural area and became an integral part of a municipality which, at all times since 1930, has had a population in excess of twenty-five hundred. (3) Upon annexation, the Power Company became obligated under its franchise to provide service throughout the enlarged corporate limits to all who applied therefor, including Dixon and Treece.

Rockingham contends: (1) Upon annexation, the Power Company is obligated by its franchise to provide service throughout the enlarged corporate limits to all who applied therefor. (2) Pee Dee has no right to operate within its corporate limits or to construct or maintain distribution lines over what are now public streets of Rockingham.

Dixon and Treece contend: They are entitled, as owners of residences in Rockingham, to apply for and receive the same service the Power Company provides the owners of residential property located elsewhere within the corporate limits.

Pee Dee does not seek herein to enjoin the Power Company from constructing and maintaining in Knob Hill such distribution lines as may be necessary to provide street lighting and fire alarm systems. Nor does Pee Dee now challenge the Power Company's right to serve residences in Knob Hill elsewhere than within three hundred feet of distribution lines constructed by Pee Dee prior to January 9, 1957.

Significant differences between the factual situation here considered and that considered in *Power Co. v. Membership Corp., ante,* 596, include the following: (1) The record is silent as to whether said contract of January 5, 1956, was submitted to and approved by the Utilities Commission. (2) Pee Dee had no distribution lines or facilities and rendered no service within the corporate limits of Rockingham before its boundaries were extended so as to include Knob Hill. (3) The said contract contains no provision similar to paragraph "TWENTY-THIRD" of the contract between Duke and Blue Ridge, quoted in the cited case.

Under the provisions of Article 8 of said contract of January 5, 1956, each party is barred as provided therein unless ordered to provide service in the restricted area "by a lawful order issued by a properly constituted authority." The Power Company, a public utility corporation, is subject to the jurisdiction of the Utilities Commission. To what extent, if any, Pee Dee is subject to the jurisdiction of the Utilities Commission need not be presently determined. This Court has held that an electric membership corporation is not required (by

G.S. 62-101), "before beginning the construction or operation of its facilities for serving its members by furnishing them electricity for lights and power, to obtain from the Utilities Commissioner of North Carolina a certificate that public convenience and necessity requires or will require the construction and operation" of such facilities. *Light Co. v. Electric Membership Corp.*, 211 N.C. 717, 720, 192 S.E. 105; *McGuinn v. High Point*, 219 N.C. 56, 77, 13 S.E. 2d 48; *Grimesland v. Washington*, 234 N.C. 117, 125, 66 S.E. 2d 794. However, it would seem that the Utilities Commission has jurisdiction in respect of the rates and terms under which a power company may sell and supply power to Pee Dee for resale. *Utilities Commission v. Municipal Corporations*, 243 N.C. 193, 90 S.E. 2d 519.

Relevant statutory provisions relating to the authority of the Utilities Commission are cited in *Power Co. v. Membership Corp., supra.* Suffice to say, nothing in the record indicates that the Utilities Commission has made any order relevant to the service to be provided by Pee Dee or by the Power Company in the Knob Hill area. Unless and until such order is made, decision must be based on the factual situation as of now.

It is clear, and apparently conceded, that the Power Company, under its said franchise, has the legal right and duty to serve Knob Hill except to the extent it is barred from so doing by the provisions of Article 8 of said contract of January 5, 1956.

It is presumed that both Pee Dee and the Power Company, when they executed said contract of January 5, 1956, were advertent to statutory provisions relating to the extension of the boundaries of a municipality, G.S. 160-445 *et seq.*, and relating to powers conferred upon the governing body of a municipality in respect of territory outside, but within a mile of, its corporate limits, G.S. 160-226, G.S. 160-203. However, Article 8 of the contract of January 5, 1956, contains no provision purporting to render it inapplicable as to territory subsequently included within the corporate limits of a municipality.

The applicability of the provisions of Article 8 of said contract of January 5, 1956, depends upon the right of Pee Dee after January 9, 1957, to render service in the defined area. We are of opinion, and so hold, that the Power Company is not barred from serving a customer Pee Dee may not lawfully serve.

The "Rural Electrification Act of 1936," USCA, Title 7, § 901 *et seq.*, the Act creating the North Carolina Rural Electrification Authority, G.S., Ch. 117, Art. 1, and the Act providing for the formation of nonprofit membership corporations, G.S., Ch. 117, Art. 2, es-

tablished a Federal-State policy to provide the benefits of electric service in *rural areas* not served or inadequately served with electricity. *Utilities Commission v. Municipal Corporations, supra,* p. 202.

Congress defined "rural area" as "any area of the United States not included within the boundaries of any city, village, or borough having a population in excess of fifteen hundred inhabitants, and such term shall be deemed to include both the farm and nonfarm population thereof." USCA, Title 7, § 913. The North Carolina legislation does not define "rural area."

To form an electric membership corporation, interested persons must first obtain the approval of the North Carolina Rural Electrification Authority. G.S. 117-9. If such approval is obtained, "(a)ny number of natural persons not less than three may . . . form a corporation not organized for pecuniary profit (but) for the purpose of promoting and encouraging the fullest possible use of electric energy in the *rural section* of the State by making electric energy available to inhabitants of the State at the lowest cost consistent with sound economy and prudent management of the business of such corporations." (Our italics.) G.S. 117-10.

G.S. 117-16 provides that the corporate purpose of such membership corporation is "to render service to its members only," and "no person shall become or remain a member unless such person shall use energy supplied by such corporation and shall have complied with the terms and conditions in respect to membership contained in the bylaws of such corporation." G.S. 117-16 was amended in 1959 (S.L. 1959, c. 387, s. 2) by adding the following: "Provided, that such terms and conditions of membership shall be reasonable; and provided further, that no bona fide applicant for membership, who is able and willing to satisfy and abide by all such terms and conditions of membership, shall be denied arbitrarily, or capriciously, or without good cause." Consideration of the Federal-State legislation impels the conclusion that an electric membership corporation is authorized to operate only in a "rural area" to serve members who are residents of such "rural area."

Knob Hill was a "rural area" when Pee Dee's distribution lines were constructed. It is no longer a "rural area." This is true if the definition of "rural area" in the Federal legislation is adopted. Be that as it may, it was stipulated that Knob Hill is now a "residential section" of Rockingham. Rockingham, the county seat of Richmond County since 1785, has a population, according to the 1960 census, of 5,512.

The crucial question, fraught with considerable difficulty, relates to the authority of Pee Dee *to continue to operate* in an area which was a "rural area" when its distribution lines were constructed but is now an integral part of Rockingham. Present statutes provide no answer. As stated by *Wyatt, Presiding Justice*, in his dissenting opinion in *City of Moultrie v. Colquitt County Rural Elec. Co. (Ga.),* 89 S.E. 2d 657, 666: "It therefore becomes the duty of a court of equity to fill in the vacuum created by the law and do justice and equity to all parties concerned." In so doing, we must keep in mind the basic statutory purpose of Pee Dee.

Consideration of all relevant factors leads to these conclusions: Pee Dee may continue to serve from distribution lines constructed in Knob Hill prior to January 9, 1957, persons who were its members on that date and who desire to continue their membership and to receive service from Pee Dee. Persons in the annexed area who did not become members of Pee Dee prior to January 9, 1957, are not eligible for such membership. Eligibility for membership is to be determined as of the date application therefor is made. *City of Moultrie v. Colquitt County Rural Elec. Co., supra,* p. 665; *State v. Upshur Rural Electric Cooperative Corp. (Texas),* 298 S.W. 2d 805.

In *Farmers Electric Coop. Corp. v. Arkansas Power & L. Co. (Ark.)* 249 S.W. 2d 837, the court enjoined the cooperative (membership corporation) from continuing its service in an area which, by annexation, had become a part of a municipality. Our conclusion is in substantial accord with that reached in *State v. Upshur Rural Electric Cooperative Corp., supra,* and in substantial accord with the views expressed by *Wyatt, P. J.,* in his dissenting opinion in the cited Georgia case. Factual differences in these three cases are noted in *Power Co. v. Membership Corp., supra.*

We are advertent to the legal consequences ordinarily resulting when additional territory is lawfully annexed by a municipality, G.S. 160-449, and to the powers of a municipality with reference to control of its streets, G.S. 160-222. But where Pee Dee, in accordance with express statutory authority, lawfully constructed its distribution lines in Knob Hill prior to its annexation on January 9, 1957, the Town of Rockingham may not force Pee Dee to discontinue service from said lines to those persons who were members of Pee Dee prior to January 9, 1957, so long as they continue members of Pee Dee and desire continuance of its service. However, Pee Dee, on and after January 9, 1957, had no right to extend its then existing facilities or to serve persons other than members whom it was serving when Knob Hill became a part of Rockingham.

It was error to enjoin Pee Dee from maintaining "upon, along or over the streets, roads and public ways of the Town of Rockingham," distribution lines it had constructed prior to January 9, 1957, and to order Pee Dee to dispose of and dismantle such lines and facilities within a specified time. It was also error to enjoin Pee Dee from continuing to provide service from distribution lines and facilities constructed by it prior to January 9, 1957, to persons who were then members of Pee Dee and who continued their membership and desire a continuance of its service. On account thereof, the judgment of the court below is vacated and the cause remanded for judgment in accordance with the law as stated herein.

It is noted: The Power Company, in its answer, offered to purchase at fair value "the useful portion" of Pee Dee's lines and facilities in Knob Hill. Its brief indicates it is still willing to do so. Such offer is significant only in relation to a negotiated adjustment of the matters in controversy. It is not relevant to an adjudication of the legal rights of the respective parties.

If it be considered undesirable that both Pee Dee and the Power Company should serve (different) customers in that part of Rockingham within three hundred feet of the distribution lines constructed by Pee Dee prior to January 9, 1957, as contemplated by this decision, this suggests the need for legislation defining the public policy in a situation such as that here under review.

The costs on this appeal will be taxed as follows: One-third to Pee Dee, one-third to the Power Company and one-third to the Town of Rockingham.

Error and remanded.

PARKER, J., concurring. The trial court enjoined Pee Dee Electric Membership Corporation from maintaining its lines and facilities "upon, along or over the streets, roads and public ways of the town of Rockingham," and ordered it to dispose of or dismantle and remove its lines and facilities within a specified time. The Court holds that this is error.

I agree with the opinion of the Court on the facts in the present record.

However, I desire to put on record my views in respect to this question. N.C.G.S., § 160-222 provides: "The governing body of the city shall have power to control, . . . the streets and sidewalks of the city . . . , and regulate, control, license, prohibit, and prevent digging in said streets and sidewalks, or placing therein of pipes, poles, wires, fixtures, and appliances of every kind, whether on, above, or

below the surface thereof, and regulate and control the use thereof by persons . . . ; to prevent, abate, and remove obstructions, encroachments, pollution or litter therein. . . ."

This is said in McQuillin, The Law of Municipal Corporations, 3rd Ed., Vol. 7, § 24.588: "Municipal corporations ordinarily may and do exercise police control over the erection and maintenance of poles, wires, pipes and similar apparatus of utility companies or others in streets, alleys and public ways. They can, in this respect, where they act reasonably, compel all generally accepted improvements which tend to decrease the obstruction of the streets or increase the safety or convenience of the public in their use. Municipal police power in this respect and for these purposes is not precluded by the fact that such structures have been erected and maintained under franchise or permission, the fact that the power to grant the franchise is vested in the legislature or the fact that the utility company has a sole and exclusive privilege, e.g., street lighting in part of the city. A municipality on incorporation becomes vested with police power over existing poles, wires, pipes, underground conduits and other apparatus of utility companies or others, located on, in or over streets and public ways within the municipality, irrespective of franchises or permits under which these structures have been erected and are maintained."

In my opinion, the town of Rockingham in the exercise of its police control has the power vested in it by N.C.G.S. § 160-222, and by the general law set forth in the quoted extract from McQuillin, over plaintiff's operations, equipment, and property in its streets, alleys and public ways.

MOORE, J., joins in concurring opinion.