COPELAND v. HARNESS.

5-3266                                            379 S. W. 2d 1

Opinion delivered May 18, 1964.

*N. J. Henley,* for appellant.

*C. Byron Smith, Jr.,* for appellee.

PAUL WARD, Associate Justice. This litigation is concerned with the interpretation of the last will and testament of W. B. Harness. The pertinent facts are not in dispute.

*Background Facts.* Harness died testate on May 12, 1961 seized of 200 acres of land on which he and his wife, Martha, had lived for many years. They had no children but Mr. Harness had several brothers, sisters, nephews and nieces—all of whom are parties herein. Harness' will (which was duly probated) in all material parts, reads as follows:

"Third . . . (a) It is my desire, will and direction that my said wife, Martha J. Harness, shall have and enjoy a life's estate in all the lands of which I die siezed and possessed.

" (b) At the death of my said wife it is my desire that my Nephew, Elmo Harness, shall have and enjoy a life's estate in said lands, and upon his death his son, Robert James Harness, shall succeed to a life's estate in my lands.

" (c) Provided, that in the event that either the said Elmo Harness or his son, Robert James Harness shall fail, refuse or neglect to actually live on my lands and should further fail, refuse or neglect to farm and care for same in a careful and husbandlike manner, then, and in that event, it is my will and direction that all of my real estate shall descend to my next of kin then living according to the laws of descent and distribution according to the laws of this state."

After the death of Martha on June 27, 1962 appellants (33 in number) filed suit on January 17, 1963 contending Elmo had forfeited his life estate by failing to live on and farm the land, and asking that the lands be sold and the proceeds divided among the heirs. The defendants (appellees here) were Sparlin Harness (a brother of the deceased), Elmo Harness (a nephew of the deceased), and Robert (a son of Elmo). Elmo contended he was living on and farming the land as required by the will, and Robert asked (if the court holds Elmo has forfeited his estate) that he be given a chance to live on and farm the land. All parties joined in asking the court to construe the designated portions of the will. At the close of a full hearing the court, in effect, held:

*One.* At Martha's death Elmo received a life estate under subsection (b) of the will, and he has substantially complied with the terms of subsection (c).

*Two.* If, in the future, Elmo fails to comply with subsection (c) Robert will have the right to protect his father's estate and his own interest.

*Three.* At Elmo's death Robert will receive a fee simple title to all the lands.

*One.* After carefully reviewing the testimony of the several witnesses under the applicable rules for construing wills we cannot say the trial court was wrong on this particular point.

Tending to show a forfeiture on Elmo's part, appellants' testimony, in substance, showed: Elmo lives in Little Rock, and no farming has been done on the land since June 27, 1962; the fences are in bad shape. Also Elmo was heard to say he and his wife made too much money in Little Rock to leave their home there.

To the contrary, testimony on behalf of appellees was in substance, as hereafter set out. Elmo testified: I took possession of the farm on August 4, 1962 (after Mrs. Harness died on June 27, 1962), and I have done everything I could do to improve the place; I have cut hay, trimmed hedges, and built some gates; I cut and

used about fifty posts in fixing the fences which were in pretty bad shape; with two exceptions I have been up to the farm every weekend and I consider the farm as much my home as my house in Little Rock. I have plans to farm this land in the future, and put cattle on it—and I have paid the taxes. Elmo's testimony was corroborated by his wife and several other witnesses.

The rules for construing wills have been stated many times by this Court. They are well stated in *Cross* v. *Manning,* 211 Ark. 803, 202 S. W. 2d 584, where there appears the following rules:

1. " 'The paramount principle in the construction of wills is that the general intention of the testator, if not in contravention of public policy or some rule of law, shall govern.'

※　※　※　※　※

5. " 'Wills are liberally construed, and every legitimate conclusion is indulged in order to reach a just and equitable result . . . and in cases of doubt the construction should be in favor of the first taker because it is against the policy of the law to tie up property . . .' "

Applying these rules to the facts in this case and the wording used by the testator, we think the trial court was correct in concluding the testator did not mean Elmo had to live continually on the land in order to enjoy a life estate. It appears from the record that Elmo has improved the property since he has had it in charge, and that the land is in better condition now than it was when Mr. Harness died. Also, we must assume Mr. Harness was aware of the fact that Elmo and his wife made their living in Little Rock, and it is unreasonable to believe he expected them to give up their jobs and spend all their time on the farm. Moreover, Elmo testified he had certain plans regarding the farm in the future, and it seems only fair that he should be given a reasonable opportunity to perfect those plans. This suit was filed only a few months after Mrs. Harness died. What Elmo may or may not do in the future is not our concern at this time.

*Two*. We are unable to agree that Robert can "step in" and enjoy a life estate in the land—by complying with sub-paragraph (c) of the will—when and if Elmo forfeits his life estate. In a sense this question is not before us now because we are holding Elmo has not committed a forfeiture. We do consider the question however in an effort to prevent possible useless litigation in the future. It seems to us that the language in sub-paragraph (c) of the will is plain and unambiguous, and that the intent of the testator is un-mistakable. The language used, stripped of the irrelevant parts, reads: ". . . in the event . . . Elmo Harness . . . should fail, refuse or neglect (etc.) . . . it is my will and direction that all my real estate shall descend to my next of kin then living . . ." This language, in our opinion, clearly eliminates Robert's life estate IF and WHEN Elmo forfeits his life estate.

*Three*. It is our conclusion that the trial court also erred in holding that, upon Elmo's death, Robert would receive a fee simple title to the 200 acres of land. The principal argument advanced by appellees to support the finding of the trial court is based on certain language used in the case of *Union Trust Company* v. *Madigan*, 183 Ark. 158, 35 S. W. 2d 349. The language referred to (found at page 164 of the Arkansas Reports) reads:

"In construing wills, the general rule is that a gift for life without a limitation over passes a fee in real estate and an absolute interest in personalty, even though words denoting a life estate was intended were used."

Applying the above language to the facts in this case appellees very cleverly point out that (under the wording of the will) Robert is given a life estate "without a limitation over" and that, consequently he gets a fee. For several reasons we are not convinced by this argument.

The above quoted rule is limited by the language which follows in the same paragraph and reads:

"However, a clear gift to one for life, without a limitation over, is held not enlarged to a fee by such

omission, unless a declared purpose is shown to dispose of all the testator's estate by will . . .''

We find no such "declared purpose" in the will under consideration. In fact, just the opposite is shown, because in sub-paragraph (c) it is expressly provided that the estate "shall descend . . . according to the laws of descent and distribution . . .'' The *Madigan* opinion was cited in the case of *Rufty* v. *Brantly*, 204 Ark. 32, 161 S. W. 2d 11, where the language above discussed was quoted in full, and the Court made the following comment: "This is, of course, a mere rule of construction, to be applied only in the circumstances stated, without the application of which the testator's intention may not be determined.'' We do not think it is necessary to resort to this seldom used rule in order to determine the testator's intention here. He used essentially the same words in giving Elmo a life estate that he used in giving Robert a life estate, and yet no one would contend that Elmo got a fee. We believe the testator clearly intended to give Robert a life estate only. Another circumstance somewhat supports our belief. Mr. Harness clearly desired his land to remain as long as possible in the name and under the control of someone bearing the name of "Harness". He knew this desire would more likely be fufilled if Robert took a life estate. On the other hand, he knew that, if Robert took a fee, he could dispose of the land at any time he pleased.

It is our conclusion, therefore, that the decree of the trial court should be, and it is hereby, affirmed in part and reversed in part as heretofore indicated.

McFADDIN, GEORGE ROSE SMITH, and ROBINSON, JJ., dissent in part.

ED. F. McFADDIN, Associate Justice (dissenting in part). I agree with all of the Majority Opinion except that part which says that Robert would lose his life estate if Elmo's life estate should be forfeited.

As I read the will, bearing in mind the rules of construction stated in such cases as *Cross* v. *Manning*, 211

Ark. 803, 202 S. W. 2d 584, and *Thompson* v. *Ark. Natl. Bank,* 220 Ark. 802, 249 S. W. 2d 958, I reach these conclusions: that if Elmo's life estate should be forfeited, then Robert's life estate would come into existence just the same as it would on Elmo's death; and that on the death of Robert, or the forfeiture of his life estate, descent would then be cast to the heirs, at law of W. B. Harness.

GEORGE ROSE SMITH and ROBINSON, JJ., join in this dissent.