MISSOURI PUBLIC SERVICE COMPANY, a Corporation, Plaintiff-Appellant,

v.

PLATTE–CLAY ELECTRIC COOPERATIVE, INC., a Corporation, Defendant-Respondent.

Kansas City, Missouri, a Municipal Corporation, Intervening Plaintiff-Appellant,

W. H. Harris, Robert Hanks and Glenn D. Petty, Intervening Defendants-Respondents.

No. 51750.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1966.

Robert L. Hawkins, Jr., Graham & Hawkins, Morris E. Osburn, Jefferson City, Alan F. Wherritt, Liberty, John C. Mills, III, Kansas City, for plaintiff-appellant.

Walter A. Raymond, Raymond, West & Cochrane, Kansas City, David R. Clevenger, Clevenger & Lay, Platte City, Arthur R. Kincaid, Hale, Coleberd, Kincaid & Waters, Liberty, for respondent Platte-Clay Electric Coop., Inc.

Herbert C. Hoffman, City Counselor, William Icenogle, Associate City Counselor, for appellant Kansas City.

James W. Benjamin, Rogers, Field & Gentry, Kansas City, L. M. Bywaters, Liberty, David D. Lodwick, Excelsior Springs, for respondents W. H. Harris, Robert Hanks and Glenn D. Petty.

HOUSER, Commissioner.

This is a suit for a declaratory judgment and injunctive relief, brought by Missouri Public Service Company, a privately owned public utility rendering electric service in Kansas City and other areas of Missouri, against Platte-Clay Electric Cooperative, Inc., a cooperative rendering electric service in rural areas of Platte, Clay and other counties. On January 1, 1962 the City of Kansas City annexed certain rural areas in Platte and Clay Counties in which the cooperative was serving 63 customers, and the city, which previously had granted plaintiff company a 30-year franchise to supply electrical service in certain areas of the city, passed an ordinance giving the company like permission in the newly annexed areas. In this action plaintiff company questions the right and authority of the cooperative to continue to render service in the annexed areas. Relying upon the procedures provided for in § 394.080,[1] V.A.M.S., plaintiff company prayed in Count I for a judgment declaring that the cooperative is engaged in illegal competition with plaintiff company and has no authority to continue to render service to existing or other and additional customers in those areas, and prayed in Count II for injunctive relief to restrain the cooperative from continuing to render or undertaking and offering to render such service, and for other appropriate relief. The City of Kansas City was allowed to intervene as a plaintiff. Three individuals, members of the cooperative, were permitted to intervene as parties defendant, as representatives of the class composed of 63 members receiving service from the cooperative in the annexed areas. The circuit court found against plaintiff company and for the cooperative and intervening defendants, declaring that the cooperative and its members have vested property and contract rights of which they cannot lawfully be deprived through the procedures instituted under § 394.080, and that the cooperative has authority to continue to render service to its present members and their successors in interest, and that the present members of the cooperative and their successors in interest have the right to continue to receive service from the cooperative in these areas without interference by plaintiff company or Kansas City. The court enjoined plaintiff company and Kansas City from interfering with the cooperative's maintenance of its facilities and its rendition of service to "its members and their successors in interest in said annexed areas" and from interfering with its members receiving service from the cooperative. Plaintiff company and Kansas City appealed. On the question of our jurisdiction plaintiff company asks that the cooperative be ordered to cease rendering service to its present customers in the annexed areas over its facilities and equipment, which the rec-

1. All section references are to RSMo 1959, V.A.M.S., unless otherwise noted.

ord shows has a reproduction cost new less depreciation of $84,375 and a going concern value of $3,100; property which it would cost $23,860 to dismantle and sever from the land. Plaintiff company contends that the cooperative, having refused its offer of $126,615 for the property, is entitled to nothing. Accordingly, the value of the physical property appears from the record to be greatly in excess of our jurisdictional amount of $15,000 at the time the appeal was taken, and the loss to the cooperative in the event the relief sought by plaintiff company should be granted, would exceed $15,000. In this situation this Court has jurisdiction of the appeal. State ex rel. Public Water Supply District No. 2 of Jackson County v. Burton, et al., Mo.Sup., 379 S.W.2d 593 [1], and cases cited 379 S.W.2d l. c. 595.

The cooperative, initially organized on August 29, 1938 under Article 29, Chapter 87, RSMo 1929, voluntarily elected to come under and is presently existing under and subject to The Rural Electric Cooperative Law, Chapter 394, V.A.M.S. In August, 1938 the County Courts of Clay and Platte Counties granted to cooperative's predecessor a "perpetual franchise" authorizing it to use the roads, highways, streets, etc. and other public ways and places of the two counties for the construction and maintenance of its equipment to facilitate the conduct of its business, "subject, however, to any laws or regulations imposed by statute." The cooperative paid occupational taxes to Kansas City during the years 1962, 1963 and 1964. It does not hold a franchise from Kansas City, and renders service within the annexed area without the consent of the city. Service is rendered to members only. Membership is governed by the by-laws. The cooperative is not subject to the jurisdiction of the public service commission, except to the limited extent provided by § 394.160. The 63 members residing in the annexed areas are part of a total membership of approximately 4,600. The rates charged by the cooperative are considerably less than that charged by plain-

tiff company. The members are satisfied with the service rendered by the cooperative. Upon annexation the areas annexed ceased to be rural areas as that term is defined in § 394.020 [1]. Since annexation the cooperative has continued to serve its members in the portions of the annexed areas served by plaintiff company, and intends to continue to serve them, and intends to render service to customers other than those to which it was rendering service at the date of annexation, and will install additional physical facilities to serve these additional customers. Since annexation three members have been added to the list of customers receiving service from the cooperative, but no service has been added to any tract of land which was not receiving service prior to January 1, 1962. The only new facilities added in the annexed areas have been meter poles and metering connections. The cooperative has not "heavied up" its lines in the annexed areas.

Plaintiff company, operating under a certificate of public convenience and necessity issued by the public service commission and a 30-year nonexclusive franchise granted by Kansas City, is and for years past has been operating in the annexed areas. At time of trial it was rendering electric service to 698 customers therein. Plaintiff company is willing and able to render electric service to all of the cooperative's customers in the annexed areas, pursuant to the rules and regulations of the public service commission.

Twice plaintiff company requested the cooperative to negotiate for the sale of the physical property of the cooperative located within the annexed areas but the cooperative declined to negotiate and has stated that said property is not for sale at any price. On February 5, 1962, following the annexation on January 1, 1962, plaintiff company filed an application with the public service commission under § 394.-080 [4] seeking a finding as to the fair and reasonable value of the cooperative's physical property. Following a hearing

the commission made an order, effective July 1, 1962, fixing that value at $126,615. Severance damages to be sustained upon removal of the facilities in the sum of $23,-860 were included in that figure. No appeal was taken from that order. On August 6, 1962 plaintiff company offered the cooperative $126,615 for its property, but the offer was declined and the cooperative continues to decline to accept this amount and sell and convey its property to plaintiff company.

Instead of stating in extenso the many points and contentions made by the several parties we will undertake in the following analysis to decide the questions determinative of this appeal.

▪ In August 1938 the territory in question was a rural area lying entirely outside the corporate limits of any municipality. The county courts of Clay and Platte Counties had sole jurisdiction and authority to grant franchises to cooperative's predecessor to build and operate an electrical distribution system on and along the roads, highways and public ways of that territory. That authority was derived from § 2078, RSMo 1929, which invested in the county court the control and management of the real property belonging to the county, and § 7924, RSMo 1929, requiring that the assent of the county court be obtained before poles for electric light wires could be erected on the public roads and highways of any county. Under the law then existing (unchanged to this date) a county court had power to grant a *perpetual* franchise for the purposes mentioned. County courts are not circumscribed by general laws of the state limiting the duration of such franchises to a certain number of years. In the absence of any general law limiting the duration of franchises for the operation of an electrical system on the roads and highways of a county, the grant of a franchise for that purpose, without specifying a period of duration, is a grant in perpetuity. State on inf. McKittrick ex rel. City of Trenton v. Missouri Public Service Corp., 351 Mo. 961, 174 S.W.2d 871, 879; State ex inf. Chaney v. West Missouri Power Co., 313 Mo. 283, 281 S.W. 709, 713, 714; State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co., 345 Mo. 6, 131 S.W.2d 525, 531; 43 Am.Jur. Public Utilities and Services § 17. These franchises, valid when issued, have never been withdrawn, revoked, abandoned or forfeited. They were not abandoned when in 1946 the cooperative's predecessor corporation elected to come under and be bound by the provisions of Chapter 394. The conversion of the predecessor to a cooperative was in substance a continuation of the predecessor corporation, Consolidated Electric Coop. v. Panhandle Eastern Pipeline Co., 8 Cir., 189 F. 2d 777, and in the conversion the assets and business, including the franchises, were taken over by the cooperative, which succeeded to the predecessor's rights and powers thereunder. By the express provision of § 394.070 the conversion had the same effect as if the cooperative had been organized under Chapter 394.

▪ When the annexation became effective the county courts lost and the city acquired jurisdiction to grant franchises in the annexed areas. The annexation, however, did not terminate the power of the cooperative to continue to furnish service to its members within the annexed areas by and through its lines and facilities previously installed pursuant to the rights granted by the county franchises. The power of the cooperative to continue to furnish service to its members at the date of annexation is expressly provided for by § 394.080 [4].[2] This reservation of power,

---

2. Even in the absence of a statute reserving the power most courts passing on the question have held that a cooperative has the right to continue to furnish electricity to its members after they have become residents of a municipality as a result of its annexation of the territory in which they were being served by the cooperative. State ex rel. Southwestern Gas & Electric Co. v. Upshur Rural Elec-

however, is limited and terminable upon the occurrence of an event. This brings us to the crux of the controversy.

Section 394.080 [4] grants cooperatives power:

"To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per cent of the number of its members; provided however, that where a co-operative has been transmitting, distributing, selling, supplying or disposing of electric energy in a rural area which, by reason of increase in its population, its inclusion in a city, town or village, or by reason of any other circumstance ceases to be a rural area, such co-operative shall have the power to continue to transmit, distribute, sell, supply or dispose of electric energy therein until such time as the municipality, or the holder of a franchise to furnish electric energy in such municipality, may purchase the physical property of such co-operative located within the boundaries of the municipality, pursuant to law, or until such time as the municipality may grant a franchise in the manner provided by law to a privately owned public utility to distribute electric power within the municipality and such privately owned public utility shall purchase the physical property of such co-operative located within the boundaries of the municipality. In case any of the parties to such purchase, as herein provided, cannot agree upon the fair and reasonable price to be paid for the physical property of such co-operative within the municipality, or if either party refuses to negotiate

for the sale of such property upon the request of the other, the fair and reasonable value of such property for such purchase shall be fixed by the public service commission upon application of any one or more of the interested parties."

The apparent object of the proviso and last sentence of this subsection is to reconcile an incongruity and protect the public interest during a transition period. The incongruity is that of a co-operative organized "for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas," § 394.030, supplying electricity within the corporate limits of a populated city served by a municipal utility or a franchised privately owned public utility. Operation in *rural* areas[3] is the principal concern of The Rural Electric Cooperative Law. The continued operation by a cooperative in areas formerly rural but lately incorporated into municipalities, provided for in § 394.080[4], is incidental to the avowed object and purpose of its organization. The public interest is the prevention of interruption of electric service during the transition period between the time when a rural area served by a cooperative, through increase of population and annexation, becomes an urban area and the time the municipality or a franchised utility operating in the municipality may purchase the physical property of the cooperative located within the boundaries of the municipality. *Purchase* is the event which terminates the power of a cooperative to continue to render service in the annexed areas. The subsection contemplates a voluntary, not a forced, sale of the physical property if the parties are able to reach an agreement. The language

tric Cooperative Corp., 156 Tex. 633, 298 S.W.2d 805 [3]; Pee Dee Electric Membership Corp. v. Carolina Power & Light Co., 253 N.C. 610, 117 S.E.2d 764; Caddo Electric Coop. v. State ex rel. Whelan, Okl.Sup., 391 P.2d 234 [1]; Montana Power Co. v. Vigilante Elec. Coop., Inc., 143 Mont. 119, 387 P.2d 718; Town of Gans v. Cookson Hills Elec. Coop., Okl. Sup., 288 P.2d 707; Duke Power Co. v.

Blue Ridge Electric Membership Corp., 253 N.C. 596, 117 S.E.2d 812.

3. " 'Rural area' shall be deemed to mean any area of the United States not included within the boundaries of any city, town or village having a population in excess of fifteen hundred inhabitants, * * *." § 394.020 [1].

is permissive, not mandatory. It contemplates negotiation, bargaining, mutual assent. An unwilling municipality or franchised utility is not bound to purchase and a reluctant cooperative is not bound to sell. The parties are not even bound to negotiate but may stand adamant and incommunicado. The proviso and language following, however, is designed to encourage and facilitate agreement. The device by which the public service commission may on application of either party fix a fair and reasonable price upon failure to agree or refusal to negotiate is intended as a means of encouraging a disagreeable party to agree or an unwilling party to come to the bargaining table. The adamant party may nevertheless continue to disagree, refuse to negotiate, and ignore the order of the public service commission, without any penalty of any kind. There is no provision for the enforcement of a sale at the figure fixed by the commission; no sanction for nonconformance or noncompliance.

 Conceding that a sale is not mandatory plaintiff company nevertheless takes the position that the subsection should be construed to mean that the cooperative's operating rights in the annexed areas terminate, once the fair and reasonable price determined by the commission is made available to the cooperative by the offer of the franchise holder to pay that sum. It argues that the cooperative has power to continue to render service only until such time as the franchise holder may *offer to purchase* its physical property—until it is "afforded a fair *opportunity for a sale* at a price to be determined by the Public Service Commission * * *." (Our emphasis.) This position ignores and runs counter to the express wording of the proviso, which confers the power "until such time as the * * * holder of a franchise * * * may *purchase* the physical property * * * or until such time as * * * such privately owned public utility shall *purchase* the physical property * * *." (Again our emphasis.) The pro-

viso is not reasonably susceptible to the interpretation placed upon it by plaintiff company. There is no language in the subsection which expressly or by necessary implication provides for the termination of the power of the cooperative to continue to render service within the annexed areas if the cooperative refuses to accept the sum fixed by the commission when offered by the franchise holder. "Provisions not found plainly written or necessarily implied from what is written 'will not be imparted or interpolated therein in order that the existence of [a] right may be made to appear when otherwise, upon the face of [the statutes], it would not appear.' Allen v. St. Louis-San Francisco Ry. Co., 338 Mo. 395, 402, 90 S.W.2d 1050, 1053, 105 A.L.R. 1222, cited with approval in State ex rel. Mills v. Allen, 344 Mo. 743, 128 S.W.2d 1040, 1043." St. Louis County Library District v. Hopkins, Mo.Sup., 375 S.W.2d 71, 75. "It cannot be said to be done by operation of law, when there is no such law." State ex rel. Lowe v. Henderson, 145 Mo. 329, 46 S.W. 1076, 1079, quoting from an Iowa case, State v. Independent School Dist. No. 6, 46 Iowa 425. We are enjoined by § 1.090 to take words and phrases in their plain or ordinary and usual sense. In Marty v. State Tax Commission of Missouri, Mo.Sup., 336 S.W.2d 696, we approved the rule that the legislative intent should be ascertained from the words used, if possible, and that the plain and rational meaning of language should be ascribed to it. If the legislature intended to provide that the cooperative's rights should terminate upon refusal of a mere offer but did not say so we could not so hold because the legislature did not so provide. "We are guided by what the legislature says, and not by what we may think it meant to say." United Air Lines, Inc. v. State Tax Commission, Mo.Sup., 377 S.W. 2d 444, 448.

 The absence of an express provision that the refusal of the offer terminates the power is significant for the reason that when it has intended to do so the General

Assembly has made full and complete provisions for the result in cases of overlapping functions resulting from municipal annexations. St. Louis County Library District v. Hopkins, supra, 375 S.W.2d 1. c. 75, 76. For instance, in Chapter 247 dealing with public water supply districts, § 247.160 provides for the voluntary sale to a municipality of a district's waterworks system upon annexation of all or part of a public water supply district. The following section, § 247.170, provides a method by which the municipality may acquire the assets of a district lying within an area annexed by a city, *without the consent or agreement of the district.* Mathison v. Public Water Supply District No. 2 of Jackson County, Mo.Sup., 401 S. W.2d 424, 431 [6]. In other words, when the General Assembly has intended to provide an alternative, compulsory method of acquisition, it has done so in terms, and not by implication. Here the failure of the lawmakers to expressly provide a method by which the franchised utility might acquire the property without the consent of the cooperative, or for the consequence in case the cooperative rejects the utility's offer to purchase, supports the conclusion that the General Assembly, by the amendment of § 5388, RSMo 1939, [Laws 1949, p. 238], intended to provide a termination date based upon a voluntary sale of the cooperative's physical property to which it agreed and consented, and did *not intend in that section to provide any method by which the acquisition could be made without the consent or agreement of the cooperative, or to provide for the termination of the latter's rights upon its refusal of the utility's offer.* (We express no opinion on the question whether a sale can be forced by the municipality or franchised utility by the exercise of the power of eminent domain.)

According to plaintiff company the cooperative, having spurned the offer, would lose its franchise rights and be left wholly uncompensated, without any right to a jury trial on the amount of its damages. This construction would destroy the voluntary character of the subsection and introduce the element of compulsion. If the cooperative's power ceased when it refused the offer the cooperative would be virtually forced to accept the offer, for otherwise it would find itself with poles, lines, transformers, drops and meters which it had no right to use. Without a franchise right to operate these facilities they would be useless as a distribution system and of value only as salvage materials, after paying the cost of dismantling and removal. That free and untrammeled exercise of discretion which inheres in a voluntary sale would be eliminated and the order of the commission fixing the amount, followed by an offer to pay, would as a practical matter be mandatory. To refuse the offer would result in substantial damage to the cooperative, thereby raising numerous constitutional questions which have been thoroughly briefed by the parties but which, under our construction of § 394.080 [4], we do not reach.

Under the issues here presented we conclude that the cooperative's refusal of an offer of the amount fixed by the commission did not automatically terminate the power specifically granted to it in the first portion of the proviso. That power continues until the specified event occurs: until a voluntary agreement for the sale and purchase of the physical property for an agreed consideration is entered into between the parties. A voluntary sale and purchase has not occurred. The time prescribed by the proviso for the termination of the cooperative's power has not yet arrived. Accordingly, the general finding for the cooperative and its members and against plaintiff, determining that the cooperative is rendering service in the annexed areas lawfully and is not engaging in illegal competition with plaintiff is affirmed.

The first paragraph of the decree should be modified, however, to read substantially as follows: "That defendant Platte-Clay Electric Cooperative, Inc., a corporation, has the power and right to continue to transmit, distribute, sell, supply and dispose of

electric energy in the areas annexed by Kansas City on January 1, 1962, and that its refusal to accept the offer of Missouri Public Service Company, Inc. of the sum fixed by the Public Service Commission as the reasonable and fair value of its physical property in the annexed areas did not terminate its franchises and operating rights therein; that under § 394.080 [4] its franchises and operating rights continue until the cooperative voluntarily decides to sell and Kansas City or a utility which it has authorized to serve the annexed areas decides to purchase the physical property of the cooperative upon terms agreeable to both parties."

 The second and third paragraphs adjudge that the cooperative has the right and authority to remain in possession, ownership and operation of its electric facilities in the annexed areas and that the present members and their successors in interest have the right and authority to continue to receive electric service from the cooperative without interference from plaintiff and intervenor Kansas City, and the fourth paragraph enjoins plaintiff and Kansas City from interfering with the cooperative and its members in furnishing and receiving service. These paragraphs should be modified, for the following reasons:

When the territory in question was annexed the cooperative to that extent came under the jurisdiction of Kansas City in respect to the use of the streets and public ways of that municipality by virtue of § 394.080 [10], which grants to a cooperative the power "To construct, maintain, and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, *subject, however, to the requirements in respect of the use of such thoroughfares and lands that are imposed by the respective authorities having jurisdiction thereof upon corporations constructing or operating elec-* *tric transmission and distribution lines or systems."* (Our emphasis.) Kansas City is a constitutional charter city. Section 82.190 gives constitutional charter cities exclusive control over its public highways, streets, avenues, alleys, etc. and the power to vacate and abandon any such ways. Section 409 of its charter gives the city council the right to require the reconstruction, relocation, change or discontinuance of appliances used by utilities in the streets and public ways whenever in the public interest. Section 1(16) of its charter gives Kansas City the exclusive control of the streets and public ways and the power to regulate the use thereof. To enjoin the city from interfering with the cooperative's present use of its facilities would improperly prohibit the city from exercising its statutory and charter powers in respect to the use of its streets and public ways. The references to Kansas City in paragraphs two and three should be deleted and the injunction against Kansas City in the fourth paragraph set aside.

 Likewise the perpetual injunction against plaintiff company should be set aside because there is no evidence that plaintiff company has interfered or threatened to interfere with the cooperative's possession, maintenance and operation of its facilities.

 A subordinate question is whether under its authority to continue to supply electricity in the annexed areas the cooperative can serve others than those who were its members on the date of annexation. The cooperative concedes that it cannot extend service to new members on premises other than those of its then-existing members but contends that it can serve their "successors in interest"; that if a tract of land which had only one service connection on January 1, 1962 is subdivided after annexation it can accept membership from and serve the owner of every house or business building which may be erected on the several lots of such subdivision. The right of the cooperative in this respect

depends upon a proper construction of § 394.080 [4]. The primary purpose of Chapter 394 is to bring electric service to members of the cooperative living in rural areas not otherwise served. Section 394.080 [4] allows an exception due to changed conditions, but this exception is not to be extended by implication because it runs counter to the spirit and purpose of the chapter as a whole, which does not contemplate the expansion of the cooperative's facilities or the addition of new members or new customers in the annexed areas. Accordingly, the cooperative cannot extend service to the owners of homes and businesses built after annexation on lots purchased from preannexation members who have subdivided their original land holdings. The franchised utility is entitled to supply this kind of new demand for electric energy in the annexed areas and in view of the cooperative's announced intentions is entitled to be protected against this type of competition by injunctive relief.

 The cooperative's right to continue service in a municipality served by a franchised utility, after annexation of territory in which it has been lawfully operating, is therefore limited to (1) members receiving service at the time of annexation; (2) persons accepted as members who become subsequent occupants of houses and places of business actually connected to the cooperative's lines on the date of annexation, where the previous occupants have resigned, moved, or their memberships have been terminated or discontinued for any other reason, and (3) persons to whom memberships predating annexation may be transferred in compliance with provisions of the by-laws.[4] (Section 394.120 (1) provides that membership is not transferable except as provided in the by-laws. The by-laws at the time of annexation made no provision for transfer of membership, but conceivably they may be amended.)

Eligibility for membership is to be determined as of the date of application therefor. In redrafting the judgment to conform to these directions the term "their successors in interest" should not be used, because it is too vague and uncertain in meaning.

The judgment is affirmed in part and reversed in part, and the cause is remanded for the entry of a new and modified judgment conforming to the views expressed in this opinion.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

---

4. See Caddo Electric Coop. v. State ex rel. Whelan, Okl.Sup., 391 P.2d 234, 238 [2]; State ex rel. Southwestern Gas & Electric Co. v. Upshur Rural Electric Cooperative Corp., 156 Tex. 633, 298 S.W. 2d 805; Pee Dee Electric Membership Corp. v. Carolina Power & Light Co., 253 N.C. 610, 117 S.E.2d 764.